DANIEL EDWARDS v. THE LAKE SHORE & MICHIGAN
SOUTHERN RAILWAY COMPANY.

*Railroad companies—Contract ticket—Conditions—Right to passage.*

Defendant sold plaintiff an excursion ticket from Lansing to
Chicago and return. The right to a return passage was condi-
tioned upon the presentation of the ticket to the agent at
Chicago, its dating and stamping by him, and the affixing of
the signature of the plaintiff to a printed statement on the
back of the ticket, as evidence that he was the original pur-
chaser. And it is held that the condition was reasonable, and
was a condition precedent to plaintiff's right to such return
passage, and that the conductor to whom the ticket was
presented was not called upon to investigate as to the identity
of the plaintiff.

Error to Ingham.    (Peck, J.)    Argued May 16, 1890.
Decided June 6, 1890.

Case.  Plaintiff brings error.  Affirmed.  The facts are
stated in the opinion.

*Cahill & Ostrander,* for appellant, contended:

1. The right to eject a passenger from a train depends upon How.
   Stat. § 3370.  He may be lawfully expelled for a refusal to pay
   his fare, or to obey such regulations as may be established for
   the convenience and safety of the passengers.
2. It cannot be said that the neglect or refusal of the plaintiff to
   get his ticket stamped at Chicago was a refusal to pay his fare,
   which he had paid, as all the evidence shows, nor was the
   regulation so neglected one relating to the convenience or safety
   of the passengers.
3. If the regulation had any binding force upon the plaintiff, it
   was by virtue of some contract relation between the parties.
   But the defendant could not lawfully assault the plaintiff to
   compel him to perform his contract; citing *Butler v. Railroad
   Co.,* 32 Am. & Eng R. R. Cas. 552.

*R. A. Montgomery (George C. Greene, O. G. Getzen—*

*Danner*, and *C. E. Weaver*, of counsel), for defendant, contended for the doctrine stated in the opinion.

CHAMPLIN, C. J. On September 13, 1887, Daniel Edwards purchased a ticket from defendant entitling him to transportation from Lansing to Chicago, Ill., and return. The ticket was called the "Chicago Interstate Exposition Excursion Ticket," and was sold to Edwards at a reduced rate from that of regular passenger tickets. It was good for going only on date of sale, and returning only to and including Monday immediately following the date of sale. It entitled the purchaser to one first-class continuous passage to Chicago, Ill., and return, subject to the following conditions printed upon the face of the ticket, viz.:

"In consideration of the reduced rate at which this ticket is sold, it will be good for going passage only on date of sale. It is good for return passage only up to and including Monday following the date of sale, and when stamped and dated on back by ticket agent of Lake Shore & Michigan Southern Railway at Chicago, and signed by me. The holder will identify himself or herself as the original purchaser of this ticket by writing his or her name, or by other means, if necessary, when required by conductor or agent. No stop-over allowed. Not transferable."

Beneath the above conditions upon the ticket are the words, "I agree to the above conditions," which was signed by D. Edwards, purchaser, in his own handwriting. The face of the ticket contained a description of the passenger, indicated by punch marks made by the ticket agent at Lansing opposite the characteristics printed thereon, which described Mr. Edwards as a slim, middle-aged man, with dark eyes and hair. On the back of the ticket there is printed the following:

"In compliance with my contract with the Lake Shore

& Michigan Southern Railway Company, I hereby sub-
scribe my name as the original purchaser of this ticket.

" *Dated Chicago, Ill.,* ———, 1887,"—

And there is a blank line for the signature. There are
also printed directions to the agents at Lansing and Chi-
cago to stamp in the space below. There were three cou-
pons attached to the ticket,—one for a passage to Chi-
cago, one for admittance to the exposition, and one for
passage from Chicago to Lansing, "limited as per con-
tract."

Edwards took passage to Chicago on September 13, 1887,
and made one continuous trip. On Saturday, September
17, he went to the depot of the Lake Shore & Michigan
Southern Railway Company, where he arrived several min-
utes in advance of the time when the train he intended
to take would leave. He busied himself with reading a
newspaper until some of the party with whom he was
announced that they must hurry up, and get upon the
train. They passed through the gateway designed as the
entrance to suburban trains, and, climbing over the plat-
form of cars and crossing tracks, reached the train which
they desired to take. Had they waited until admitted
through the proper gate to take this train, their tickets
would have been inspected by the gate-keeper, and no one
would have been admitted unless his ticket entitled him
to ride on that train. Soon after the train pulled out,
the conductor came through the car in which Edwards
and his companions were seated, collecting tickets and
fares. Edwards presented the ticket above described, hav-
ing attached a coupon for passage from Chicago to Lan-
sing, upon which was printed: "Limited as per con-
tract." The plaintiff had neglected or omitted to sign
his name upon the back of the ticket as the original pur-
chaser, and had neglected to have it stamped and dated
upon the back by the ticket agent in Chicago. Upon

presenting the ticket to the conductor, he refused to receive it because it was not stamped nor dated by the ticket agent at Chicago, and did not contain the signature on the back, and informed Mr. Edwards that without these he could not take the ticket, and that he must get off at the Twenty-second Street station, when he could go back and get it stamped. Mr. Edwards declined to get off, and the conductor told him that he must get off at that station or he would have to put him off. The train stopped at that station, but Mr. Edwards did not get off.

After passing the station the conductor found him upon the train, and told him again that the ticket was worthless, and that, if he insisted upon riding on that train, he would have to pay his fare to Elkhart, which was his run, and he would give him a receipt for it, so he could show it to the company and settle the matter with them; and Edwards said he would pay his fare, as the conductor testifies; that he then made out a receipt; and, when he presented it to Edwards, he then inquired if he would have to go through with the same thing with the next conductor, and was told he would. He then said he would not pay; that he had already paid his fare, and was going to ride home on the ticket. He explained to the conductor who he was and where he lived, and referred him to three or four citizens of Lansing then sitting near in the car, who would identify him, and offered to pay the expense of a telegram to the agent at Lansing to verify the sale of the ticket to him. The conductor told him he was acting under rules of the company, which required him to refuse tickets which were not stamped and dated by the agent in Chicago as required by the conditions of the ticket, and that unless he paid his fare he would put him off.

Mr. Edwards denies that he offered to pay his fare if

he was given a receipt, but says the conductor offered to give him a receipt if he would pay his fare. After they had got about 25 miles out, the conductor asked to see the ticket. Edwards handed it to him, and he put it in his pocket, and told him "When you pay your fare, I will give you your ticket and receipt." At the same time he explained to him that if he would pay his fare, and take a receipt for it, when he got to Lansing, and presented the receipt and ticket to the agent, his money would be refunded, and that if he did not pay his fare he would be put off at Elkhart. He refused to pay, and was put off at Elkhart. His ticket was handed back to him before he was put off. He brings this action, in trespass on the case, to recover his damages for being forcibly ejected from the train. The trial judge held that he could not recover.

It is claimed by counsel for plaintiff that the condition requiring the ticket to be stamped at Chicago was an immaterial condition, so long as the plaintiff had, to the certain knowledge of the conductor, taken passage at Chicago; that plaintiff was in a situation to, and offered to, identify himself as the proper person,—as the purchaser of the ticket; that the question of identity was, by the ticket itself, to be finally decided by the conductor; that the peculiar circumstances, including the terms of the ticket contract, distinguished this case from all those cases in which the reasonableness of conditions in tickets, limiting the use of them, have been passed upon by the courts. These distinctions are pointed out by counsel for plaintiff as follows:

"1. But one question arose, or could possibly have arisen, concerning his right to ride upon the ticket. That question, addressed to the conductor, was: 'Is this man who presents this ticket to me the person who bought it and owns it, and is entitled to ride upon it?'

"2. That, taking the condition, or all the conditions,

of this ticket together, they give to the conductor the right and power to pass finally upon this question; to answer it for the company; to determine the fact.

"3. This power or right, being one provided in the contract itself, and for the benefit of the company, and it imposing a duty and obligation upon the passenger which he must discharge upon request to the company, also imposes a duty upon the company, its officers and agents."

Unquestionably, parties capable of contracting may enter into such agreements as they choose; and, if they rest upon a sufficient consideration, and are not void for illegality, nor as being against public policy, they are binding upon them. The contract of carriage in this case, including the conditions, was a valid and binding agreement. The conditions were reasonable, and rested upon a sufficient consideration, namely, the reduced rate of fare. Ordinarily a person going by rail from Lansing to Chicago would be required to purchase a ticket at the point of starting, and upon returning he would be required to purchase a ticket, from the agent in Chicago, from that place to Lansing. Under the conditions of this ticket, he is required to do no more than call upon the agent there to secure his passage from Chicago to Lansing in accordance with the conditions. There is nothing unreasonable or annoying in this requirement. The trouble to the passenger is no more than would ordinarily occur, except the signing of his name, and, if required, to identify himself, which he has received the consideration for in the reduced rate of fare. His contract with the company was that it would transport him from Chicago to Lansing upon condition that he would present his ticket to the agent at Chicago, sign his name in compliance with the contract upon the back of the ticket, and have it dated and stamped upon the back by the ticket agent. This part of his contract he did not comply with. It was a condi-

tion precedent to his right to be carried from Chicago to Lansing upon that ticket. The unstamped ticket gave him no right to a return passage; and, he absolutely refusing to pay his fare, there was no contract in force between the plaintiff and defendant company to carry him upon its cars. Under such circumstances, it had a right to eject him from its cars. The company had broken no contract, and was not in fault, but was ready to fulfill its contract according to its terms and conditions. This being so, it is difficult to see how its ejecting him from the cars, where he had no right to be, can be treated as a tort; it having used no more force than was necessary to accomplish the purpose. To hold it liable would be to hold it responsible to plaintiff for the consequences of his own neglect and failure to comply with the contract upon his part. This would be neither reasonable nor just.

The distinctions which the plaintiff's counsel seek to make, above stated, are not warranted by the contract. The plaintiff's right to ride on that ticket from Chicago to Lansing did not depend upon his being the identical person who purchased the ticket, but upon his compliance with the condition precedent of having it stamped and dated, and signing his name. He is not entitled to ride upon it on his return unless this condition is complied with; and no power or authority is given to the conductor to finally determine whether he has a right to a passage upon that ticket, unless it is stamped, etc., in accordance with the contract. Neither could the conductor be called upon to enter upon an investigation of the identity of the plaintiff. This position is well answered by Mr. Justice Gray in the similar case of *Mosher v. Railroad Co.*, 127 U. S. 396 (8 Sup. Ct. Rep. 1324). He says:

"The conductor of the defendant's train, upon the

plaintiff's presenting a ticket bearing no stamp of the agent at Hot Springs, had no authority to waive any condition of the contract, to dispense with the want of such stamp, to inquire into the previous circumstances, or to permit him to travel on the train. It would be inconsistent alike with the express terms of the contract of the parties, and with the proper performance of the duties of the conductor in examining the tickets of other passengers, and in conducting his train with due regard to speed and safety, that he should undertake to determine, from oral statements of the passenger or other evidence, facts alleged to have taken place before the beginning of the return trip, and as to which the contract on the face of the ticket made the stamp of the agent of the Hot Springs Railroad Company at Hot Springs the only and conclusive proof."

See, also, the late case of *Boylan v. Railroad Co.*, 132 U. S. 146 (10 Sup. Ct. Rep. 50). The authorities are uniform that, under a contract like the one in question here, there is no liability, either in tort or upon contract, where the plaintiff has failed to comply with the condition precedent stated above.

The judgment must be affirmed.

MORSE, LONG, and GRANT, JJ., concurred. CAHILL, J., did not sit.