CENTRAL TRUST CO. OF NEW YORK v. EAST TENNESSEE, V. & G.
RY. CO. et al. (MEREDITH, Intervener).

(Circuit Court, N. D. Georgia. November 6, 1894.)

No. 507.

RAILROADS—RIGHTS OF PASSENGERS—SIGNATURE ON TICKET.

Plaintiff purchased a round-trip ticket at M., in the state of Louisiana, from that place to T., in the state of Georgia, entitling him to passage over several connecting railroads. The ticket contained a contract, which was signed by plaintiff, stipulating, among other things, that, on the day of his return from T., plaintiff would identify himself, by his signature on the ticket, before the agent of the railroad at that place, who would witness the same; that, if not so signed and witnessed, the ticket should be void; that no agent should have power to modify the contract; and that plaintiff would not hold any of the railroads liable on account of any statement, not in accordance with the contract, made by any agent. On the day of his return from T., plaintiff offered to identify himself before the agent, and requested him to sign the ticket, but the agent told him it was unnecessary, and refused to sign the ticket. Plaintiff traveled part of the way, on his return, without objection, but was ejected from the train by the conductor on one of the railroads forming the line, because his ticket was not signed and witnessed as required by its terms, plaintiff being unable and refusing to pay his fare. *Held,* that, the contract between the railroad and plaintiff being express and its terms not having been complied with, the conductor had a right to expel plaintiff from the train, and no right of action accrued to plaintiff in consequence.

This was a suit by the Central Trust Company of New York against the East Tennessee, Virginia & Georgia Railway Company for the foreclosure of a mortgage. M. L. Meredith filed an intervening petition praying for an allowance of damages against the receivers appointed in the suit. The petition was referred to a special master, to whose report the intervener filed exceptions.

The only question urged before the court is the one discussed by the special master in his report, and that is whether this case is controlled by the case of Mosher v. Railway Co., 127 U. S. 390, 8 Sup. Ct. 1324. The question at issue will clearly and fully appear from the report (dated August 24, 1894) of the special master (Benjamin H. Hill), which is as follows:

"To the honorable the judges of said court: This is an action for damages brought by M. L. Meredith against the receivers of the East Tennessee, Virginia & Georgia Railway Company, and by an order passed by this court on March 26th, 1894, the same was referred to me as special master 'to hear and report to the court both the law and facts.' In pursuance of said order, and after due summons, I have taken the testimony and heard argument of counsel, and now submit the following report:

"I find the following to be the facts: On the 3d day of August, 1892, the intervener, M. L. Meredith, purchased at Monroe, in the state of Louisiana, from the agent of the Cincinnati, New Orleans & Texas Pacific Railroad Company, what is commonly known as a 'round-trip ticket,' from said last-mentioned place, to wit, Monroe, via Chattanooga and Atlanta, to Tallulah, in the state of Georgia, said ticket being good to return until the 31st day of October thereafter. The coupons on said ticket, both going and returning, were good for passage over the East Tennessee, Virginia & Georgia Railway Company's road, then being operated by the receivers of this court between Atlanta and Chattanooga. At the time intervener purchased said ticket, he entered into a special contract with the several roads over whose lines the ticket entitled him to be carried upon certain terms and conditions, of which those material to be here stated were as follows: '(6) I further agree that on the day of my departure, returning, I will identify myself as the original purchaser of this ticket by my signature on the

back of this contract, and by other means, if necessary, in the presence of the authorized agent of the B. R. & A. R. R. [meaning the Blue Ridge & Atlantic] at the point to which the ticket was sold, who will witness the same, and that this ticket shall be void if these conditions are not fully complied with. (7) That I, the original purchaser, hereby agree to sign my name, and otherwise identify myself as such, whenever called upon to do so by any conductor or agent of the line or lines over which this ticket reads.' '(12) That I will not hold any of the lines named in this ticket liable for damages on account of any statement, not in accordance with this contract, made by any employé of said lines. (13) And it is especially agreed and understood by me that no agent or employé of any of the lines named in this ticket has the power to alter, modify, or waive, in any manner, any of the conditions named in this contract.' The contract containing these conditions was signed by the plaintiff, in the presence of the agent of the first-named railroad, at Monroe, La. The plaintiff traveled on said ticket to Tallulah, in the state of Georgia, and, on the date of his return or departure from Tallulah, he went before the agent of the Blue Ridge & Atlantic Railroad Company for the purpose of signing the return part of the ticket, and having the agent to witness his signature; in other words, to comply with the sixth condition of the contract set out above. In response to his request to the agent to so witness his signature, he was informed by him that it was 'unnecessary to do so; that the form was antiquated, and it would do no good to sign it; and that, if any conductor put me [him] off on that ticket, the railroad company would be liable in damages.' This statement of the agent was satisfactory to the plaintiff, and he thereupon commenced his return trip to Monroe, La. He traveled over the Blue Ridge and R. & D. Railroad Co. to Atlanta, Ga., on said ticket; the conductors of the roads either not noticing that the requirements of the sixth condition of the contract had not been complied with, or, if so noticing, making no point on the same. On the railway of the East Tennessee, Virginia & Georgia, operated by the above-mentioned receivers, a few miles out from Atlanta, the conductor demanded of the plaintiff his ticket, and the plaintiff produced the one in question. The conductor declined to receive the same, on the ground that the sixth condition of the contract had not been complied with by the plaintiff, and demanded that he pay his fare. The plaintiff explained to the conductor why he had not complied with said condition, stating that he had been informed by the agent of the Blue Ridge & Atlantic Railroad Company at Tallulah that it was not necessary now to do so, and that the agent had declined to identify him and to witness his signature, as provided by said condition of the contract. This statement did not satisfy the conductor, and he demanded that the plaintiff pay his fare. The plaintiff had no money to do so with, and the conductor informed him that he would be compelled, under the rules of the company, to put him off the train at the next station, and required him to pay his fare from Atlanta to said station. When said station, which was Nick-a-Jack, was reached, the conductor collected from the passenger his fare from Atlanta to said station, and the plaintiff thereupon obeyed the order of the conductor, and got off the train. There is no allegation or evidence that the manner of the conductor in expelling the plaintiff from the train was offensive or insulting, or otherwise objectionable; the fact of expulsion being alone complained of. The plaintiff, after being expelled from the train, returned to Atlanta on the next train, when, after employing a lawyer to bring suit against the receivers, he proceeded to Gainesville, from which point he telegraphed to his home in Monroe, La., for money to buy another ticket to his home, which he did buy. It was also shown that the agent at Tallulah had declined to witness signatures of parties holding similar tickets, making the same statement to them, that it was not necessary to do so, and the passengers traveled upon them. It was also shown that a similar ticket held by a woman was presented to a conductor of one of the lines named in said ticket, unsigned and unwitnessed, who declined to receive the same, but compelled the passenger to pay fare, and that, on the fact being presented to the authorities operating the railway, the money of such passenger was refunded.

"These are all the facts proven before me, and the question for my decision is, do they make a case of liability, under the law applicable thereto? It is contended by counsel representing the receivers that they do not: (1) Because the conductor of the East Tennessee, Virginia & Georgia Railway Company had the legal right to expel the passenger from the train, under the facts. (2) That, if the intervener has any remedy, it is not for being expelled, but for a breach of the implied contract made with the defendants that the agent at Tallulah would identify him and stamp his ticket. (3) That the road whose agent failed to discharge his duty in identifying and stamping is the one liable, and not the road whose conductor put the passenger off the train. (4) That in no event can there be any recovery for damages, except compensatory damages. (5) Exemplary damages cannot be recovered against the receivers in their official capacity.

"As to the first proposition. Did the conductor of the East Tennessee, Virginia & Georgia Railway Company have the right to expel the passenger from the train, under the facts? The master is of opinion that he did have such right, and his opinion is based upon the decision of the supreme court of the United States in the case of Mosher v. Railway Co., 127 U. S. 390, 8 Sup. Ct. 1324. This decision of the supreme court, it would appear, is conclusive on this point of the case, unless the facts make a different case than that decided by the supreme court, and the master thinks, in principle, there is no difference. The contract between the passenger and railroads was express that the ticket, to be good for the return passage, must be signed by the passenger at Tallulah, before the agent of the Blue Ridge & Atlantic Railroad Company at that place, and be witnessed by him. When this ticket was presented to the conductor of the defendants, and he found that this condition of the contract had not been complied with, he had no authority to receive the ticket from the passenger, waive any of its conditions, or to permit him to travel on the train unless he paid fare. 'It would be inconsistent alike with the expressed terms of the contract of the parties,' quoting from the above decision, 'and with a proper performance of the duties of the conductor in examining the tickets of other passengers, and in conducting his train with due regard to speed and safety, that he should undertake to determine from oral statements of the passengers, or other evidence, facts alleged to have taken place before the beginning of the return trip, and as to which the contract on the face of the ticket made the stamp of the agent at Hot Springs the only and conclusive proof.' This case was first decided by Judge Brewer in the circuit court, who, in a very able opinion, reviews the question of law presented by the facts, which opinion was affirmed by the supreme court above cited. 23 Fed. 326. In this opinion the court says: 'It certainly would introduce a very uncertain rule of procedure if the conductor could not rest upon the face of the ticket which was presented to him; if he was bound to act as a judicial tribunal, and take the testimony, and inquire into the excuses or reasons for the nonperfection of the ticket which was presented to him. The party took the ticket, upon the face of which was an express stipulation that before it should be good for return passage the holder should be identified by the agent at Hot Springs, and he should stamp the ticket as therein provided. Can the court cast upon the conductor the duty of entering upon a judicial investigation? Of course, the conductor could not, at the instant, secure counter testimony, and he would be bound to take the statement of the party as to the facts of the case, independent of the express language of the ticket. I do not think the conductor is bound to do anything of the kind. I think he has a right to rely upon the contract as expressed in the ticket.' Id. Also Railway Co. v. Bennett, 1 C. C. A. 544, 50 Fed. 501, a strong case; Hutch. Carr. § 580b, and cases cited in notes. This is the only decision by the United States supreme court exactly in point, and is so clearly in point that the master relies upon it as conclusive of the proposition that the conductor had a legal right to expel from the car the intervener, under the facts proven, unless there is some additional fact or facts which differentiates this case from the case decided by the supreme court.

"It is true the supreme court of Georgia, in the case of Head v. Railway Co., 79 Ga. 358, 7 S. E. 217, seems to present a contrary view of the law,

the second headnote being as follows: 'If the purchaser of a round-trip ticket, after paying for and receiving it, performs the stipulations of the contract on his part, or offers to, in proper time and manner, the company is bound to recognize and honor the ticket when and wherever it is presented, notwithstanding any mistakes or omission by its agents in signing or stamping the same.' The ticket in the Head Case contains almost the same conditions as the one in the present case. The principle of law announced by the court in the headnote is somewhat broader than the facts of the case, but, in any event, as the plaintiff's right to recover in this case does not depend upon the construction of any statute of the state of Georgia, but only upon his common-law right in an action on the case for damages, the decision of the supreme court of the United States would control, where there was any conflict between the two courts. The seventh condition of the contract quoted above, by which the ticket is to be void unless the plaintiff identifies himself whenever called upon to do so by the conductor, is evidently intended as an additional precaution against the transfer of the ticket either in going or returning, and not as an alternative or substitute for the previous condition of the validity of the ticket for the return trip.

"The able counsel for the plaintiff endeavors to show that there is an essential difference between the present case and the Case of Mosher, in 127 U. S., 8 Sup. Ct.; but the master does not think there is any substantial difference in the facts of the two cases, and that the principle of law announced by the supreme court is controlling, as applicable to the facts in either case.

"Counsel for plaintiff also insists that the statement of the agent at Tallulah that the sixth condition of the contract was no longer necessary, in connection with the fact that passengers on similar tickets, unwitnessed and unstamped, had been permitted to pass over defendants' road, and that the fare of one passenger on one of the connecting lines whose ticket was unwitnessed, and from whom the conductor had demanded the fare, had been refunded, furnished evidence that the condition had been abrogated; and that, as the defendant presented no contradictory evidence on this point, the master ought to accept the fact as proven, and that the expulsion of the plaintiff was wrongful, as either the conductor knew that the condition had been abrogated, and, notwithstanding his knowledge, wrongfully expelled the passenger, or that the receivers operating the road were at fault in not informing the conductor of such abrogation.

"It is also insisted that the agent at Tallulah was the agent of the defendants, and that his declaration made to the passenger was in the line and scope of his agency, and was binding upon his principal. Accepting all these statements as having been made by the agent at Tallulah, and conceding that he was the agent of the defendants for the purpose of identifying the holder of the ticket and stamping the same, yet the master does not think that his declarations, even when aided by the other facts proven, are sufficient to show that this special contract made in writing by the plaintiff with the defendants was in fact abrogated. The declarations of the agent at Tallulah are clearly inconsistent with the express stipulation contained in the sixth condition of the contract, and if, on account of such declarations, any damage has resulted to the plaintiff, he has, by the twelfth condition of the contract, expressly agreed that he would not hold the defendants liable therefor; and by the thirteenth condition of the contract he has also agreed that no agent or employé of any of the lines named in the ticket has any power to alter, modify, or waive, in any manner, any of the conditions named in the contract."

In this opinion the master only passes upon the petition presented to him and the facts proven in support of the allegations of said petition. He does not deem it necessary to decide the question made by the defendants, that the plaintiff may have a remedy in other forms of action, nor is the question as to whether punitive damages can be recovered against the receivers decided. On the case as presented to the master, he reports in favor of the defendants. All of the evidence is identified and approved by the signature of the master written thereon.

Hall & Hammond, for intervener.
Dorsey, Brewster & Howell, for defendants.

NEWMAN, District Judge (after stating the facts). In my opinion, the conclusions of the special master in this case, as above set forth, are correct. The decision of the supreme court in the case of Mosher v. Railway Co., 127 U. S. 390, 8 Sup. Ct. 1324, is conclusive of the question at issue here. There can be no distinction in principle between that case and the case at bar. The decision of the supreme court is clearly based on the ground that the agent of the Hot Springs Railway Company at Hot Springs was not the agent of the defendant company in that case, which necessarily decides and controls the question here, and determines that the agent of the Blue Ridge & Atlantic Railroad Company at Tallulah Falls was not the agent of the receivers of the East Tennessee, Virginia & Georgia Railroad Company. The terms of the contract signed by the intervener, by which it was agreed that the ticket should not be good for return passage unless the holder identified himself in the presence of the agent at the point named, are substantially the same as those signed by the plaintiff in the Mosher Case, supra, and the views expressed by the supreme court apply to and govern the facts of this case so fully that further discussion of the matter would be superfluous. The report of the special master is confirmed, and the exceptions overruled.