COURTNEY ET AL. *v.* CLINTON, BY NEXT FRIEND.

[No. 2,155.    Filed December 14, 1897.]

DAMAGES.—*Measure Of.*—*Torts.*—In an action in tort for damages, the amount of recovery, in the absence of malice, is the actual damages sustained, including physical pain and suffering, and expense incurred incident to the injury.  *p. 622.*

JUDGMENTS.—*Torts.*—*Amount of Recovery.*—*Reversal.*—The appellate tribunal will not interfere with the verdict of a jury on account of excessive damages unless the amount of recovery is so clearly excessive as to indicate that the jury acted from prejudice, partiality, or corruption, or was misled as to the measure of the damages.  *pp. 622, 623.*

SAME.—*Assault and Battery.*—*Abortion.*—*Excessive Damages.*—A judgment for $3,500.00 in an action for an assault and battery with intent to commit an abortion is excessive, where the evidence showed that no permanent injuries resulted therefrom, that the injuries, if any, did not prevent plaintiff from attending to her daily domestic and social duties, and when no malice was shown to exist, but that plaintiff voluntarily submitted to such operation.  *pp. 623–629.*

From the Daviess Circuit Court.  *Reversed.*

*M. S. Hastings, J. G. Allen, E. E. Hastings, A. J. Padgett, J. C. Billheimer* and *John Downey,* for appellant.

WILEY, J.—Appellee prosecuted this action, by her next friend, against appellants, for an alleged assault

and battery with intent to produce an abortion upon her, and cause her to miscarry and to be delivered of a bastard child, of which she was then pregnant, by the appellant, James E. Courtney. The issues were joined by general denial, tried by jury, and general verdict for appellee for $3,500.00, and judgment thereon over appellants' motion for a new trial.

The complaint avers that appellant, Levi M. Courtney was a farmer, that he was a married man, that he lived with his family, one of whom was the appellant, James E. Courtney, his son; that appellee became a domestic in his family; that appellant, James E. Courtney, professed love to her, asked her to marry him, and that they finally did enter into a verbal marriage contract. It is further charged that after they became engaged to marry, he, James E. Courtney, importuned her to have sexual intercourse with him; that she finally yielded to his desires and embraces, and that by reason thereof she became pregnant; that after she became pregnant, the appellant, James E. Courtney, refused to marry her while she was in that condition; that the said James E. Courtney informed his father, Levi M. Courtney, of the condition she was in, and that they, together with the appellant, Charles R. Derment, entered into a conspiracy for the purpose of committing an abortion upon her and causing her to be prematurely delivered of said bastard child; that the said Charles R. Derment first prescribed for her certain medicines, which she took from time to time, but which did not produce the intended effect; that thereupon the said Levi M. Courtney procured the attendance of said Derment upon her while she was still living at said Courtney's house, and that the said Derment did attend her, gave her large quantities of chloral and other drugs, and finally attempted to perform an abortion upon her by instruments inserted in

her vagina and womb, for the purpose of causing her to miscarry; that he performed said operation at three different and distinct times, but failed to produce such miscarriage; that by reason thereof she suffered great bodily pain and humiliation, and that her health has been permanently injured, to her damage, etc.

Appellants have assigned four distinct specifications of error, but they are all waived by failure to discuss them, except the third, which is that the court erred in overruling the appellants' motion for a new trial.

The reasons assigned for a new trial were, first, that the verdict of the jury was not sustained by sufficient evidence. Second, that the verdict of the jury was contray to law, and third, that the damages assessed by the jury were excessive.

Counsel for appellant say, that it is upon the third reason assigned in their motion for a new trial that they rely for the reversal of the judgment, and it is the only one they have discussed. The appellants go so far as to say "we ask the court to examine thoroughly the testimony of the appellee, and it is upon her testimony alone that we desire to stand or fall."

The appellee has not favored us with any brief or citation of authorities in support of the judgment. As the appellants have discussed but one proposition, we will not look to the record for other questions which it may probably contain.

The action is one sounding in tort, and in such case the amount of recovery in the absence of malice is the actual damages sustained, including physical pain and suffering, and expense incurred incident to the injury. The rule prevails in this State, that the appellate tribunal will not interfere with the verdict of a jury unless the amount of recovery is so clearly excessive as to indicate that the jury acted from prejudice,

partiality, or corruption, or were misled as to the measure of the damages. *Wolf* v. *Trinkle*, 103 Ind. 355; *Lake Erie, etc., R. W. Co.* v. *Acres*, 108 Ind. 548; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Louisville, etc., R. W. Co.* v. *Falvey*, 104 Ind. 409; *Louisville, etc., R. W. Co.* v. *Pedigo*, 108 Ind. 481.

, Chancellor Kent said that courts will not disturb a verdict on the ground of excessive damages unless they are so "outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption." *Coleman* v. *Southwick*, 9 Johns, *45.

To determine the question as to whether or not the damages are excessive, when measured by the evidence, and as the appellants say that they rest their case upon the evidence of the appellee alone, we must look to that.

Her evidence, briefly summarized, discloses the following facts:    She became a domestic in the family of the appellant, Levi M. Courtney, in the spring of 1893, and remained in his service until about the 1st of January, 1895; she became twenty-one years old in October, 1894, and the defendant, James E. Courtney, was twenty-four years old, while she was so in the service of Levi M. Courtney; the appellant, James E. Courtney, made love to her, asked her to marry him, and they mutually agreed that the marriage ceremony should take place on or about January 1, 1895.   After she had become engaged to James E. Courtney, he persuaded her to sumbit to his embraces, and she had sexual intercourse with him some five or six times, the first of which was in July or August, 1894; they had sexual intercourse sometimes in her room in her bed, and sometimes in his room in his bed.   As a result of such sexual intercourse, she became pregnant, and her

first knowledge of her pregnancy was the fact that she missed her menstrual period in October, 1894, and about the middle of November following, she became satisfied that she was pregnant. Thereupon she informed James E. Courtney of such fact, and that the said James E. Courtney informed his father, Levi M. Courtney. Appellee then asked James E. Courtney what he proposed to do about it, and he said to her that he would not marry her while she was in that condition, and that his father objected to their marriage on that account. She then states that both Levi and James E. Courtney advised her to take medical treatment to the end that an abortion might be produced upon her, and that Levi M. Courtney went to a physician and got medicine for her to use for that purpose; that she took a part of the medicine, but it did not produce the desired effect; that the said Levi M. Courtney then called Dr. Derment, one of the appellants, for the purpose of performing an operation upon her to produce an abortion; that said Derment then gave to her a quantity of medicine, which she took, and it failing to produce the desired result, he then performed an operation upon her by inserting in her vagina and womb an instrument; that with it he probed in her private parts for about three-quarters of an hour; that when Dr. Derment performed an operation upon her it was at night at the residence of Levi M. Courtney; the said operation caused her great pain and suffering, but the following morning she got up and assisted in doing the housework, washed dishes, went to church and sang in the choir; that Dr. Derment continued to treat her by way of giving her medicine; after the first operation he operated again upon her twice, by inserting in her vagina and womb some kind of an instrument for the purpose of producing such abortion, probing therein for about three-quarters of an hour each

time, but that both the medicine he gave her and the operations performed by him failed to cause her to miscarry; and that at and during the trial of this cause she was still pregnant, and had no miscarriage as a result of such treatment and operations; that after she began to take medicine, and after the first operation performed upon her, up to and including and after the last operation, she continued to do her work, go to church and parties, and to walk various distances, from a quarter of a mile to four miles. The appellee further testified that the taking of said medicine made her very sick at her stomach, causing her great pain and bodily suffering. Neither the evidence of the appellee nor any evidence in the record shows that there was any permanent injury resulting to the appellee from the medicine she took or the operations performed upon her. It further appears from the evidence of the appellee that before she brought this action, she went before a justice of the peace, filed a complaint against appellant, James E. Courtney, for bastardy, and that a compromise was agreed upon between them whereby he paid her $300.00, which was accepted. Her evidence further shows that she voluntarily took the medicine that was given to her, and submitted to the operations that were performed upon her for the purpose of producing an abortion.

The theory of the complaint is that the appellants committed an assault and battery upon appellee, for the purpose of producing an abortion upon her. In 1 Wait, Act. and Def., p. 344, section 11, it is said: "An assault implies force upon one side, and repulsion, or, at least, want of assent, upon the other. An assault upon a consenting party would, therefore, be a legal absurdity."

Mr. Cooley, in his work on Torts, p. *163, says that,

"consent is generally a full and perfect shield when that is complained of as a civil injury which was consented to."

In 1 Jaggard on Torts, p. 199, it is said: "Harm suffered by consent is not, in general, the basis of a civil action. * * * If the defendant is guilty of no wrong against the plaintiff except a wrong invited and procured by the plaintiff for the purpose of making it the foundation of an action, it would be most unjust that the procurer of the wrongful act should be permitted to profit by it."

The supreme court of Kentucky, in the case of *Goldnamer* v. *O'Brien*, 98 Ky. 569, 33 S. W. 831, 36 L. R. A. 715, where the facts in all essential respects were similar to those in the case before us, held that there was no liability. In that case the appellee sued appellants for an assault with intent to commit an abortion, and recovered in the court below. The court said: "If we assume from the proof that the appellants did in any way induce the appellee to resort to this method of hiding her shame, and they deny this most earnestly, it is clear from the testimony that she left her home * * * and went to Louisville in search of this relief voluntarily, and alike voluntarily submitted herself to the treatment of a physician. * * * * * *

"The right to recover is of course clear unless it is destroyed by the complainant's consent to the assault. * * * * It may be stated generally that the suit of a wrongdoer will be rejected when seeking redress for another's having participated with him in the wrong."

Again the court said: "They [the appellants] may have urged the Louisville trip as the only means of securing the desired result, and may have furnished money or otherwise assisted the plaintiff in the accomplishment of her purpose. While it is not directly shown that either of them employed or otherwise pro-

cured the physician, and such a conclusion is based on the barest inference, yet this question is properly submitted to the jury, and we shall assume such a state of facts.  *   *   *   *

"Is she entitled to a judgment upon the state of facts thus assumed to exist, and apparently found to exist by the jury?"

Upon the evidence, the jury evidently arrived at the conclusion, that appellants procured for appellee the medicines she took; that they connived together, to the end that appellant, Derment, should perform upon her an operation or operations, for the purpose of causing her to miscarry, and that they did this for the purpose of producing an abortion.  As in the case from which we have just quoted, it is but justice to say that each of the appellants strenuously denies any participation in, or knowledge of the facts charged against them, except James E. Courtney admits having had sexual intercourse with appellee.

There are many other facts and circumstances which throw much doubt and discredit upon the evidence of the appellee, as to that part of her evidence regarding the attempt to produce an abortion.  That part also of her evidence is unsupported by any other evidence.  Appellee testified that Dr. Derment used an instrument upon her three different times, and for three-quarters of an hour at a time, probing in her vagina and womb.  When we take into consideration the delicate organism of the vagina and womb, it seems almost incredible that appellee could undergo the severe operations she says she did, and yet not abort, or have her health seriously impaired.  Consider these operations, and the effect that ergot, chloral, and chloroform would have, from the enormous quantity she says she took, and yet no serious results follow, we say it is incredible, and casts discredit

upon her evidence. In saying this, we do not intend to be understood as invading the province of the jury, or that we are weighing the evidence. All these questions of fact were submitted to the jury, and there was evidence from which they could all be resolved in favor of the appellee. The jury having done this, as we assume they did,—and they must have done so to arrive at the conclusion reached,—it removes from our consideration any question of fact.

But when we take the facts, as we assume the jury determined them, and apply the law to them, we can not see upon what sound reason or solid basis the judgment can rest.

The evidence does not show that any permanent injury was sustained by the appellee. The injuries, if any she received, did not prevent her from performing her daily labors and duties. She continued to perform her labors as a domestic; she cooked, washed dishes, washed and ironed clothes, did housework, walked short and long distances, walked at one time four or five miles; rode in buggies and farm wagons, went to church and sang in the choir; went to parties, and visited at neighbors. The record contains much evidence in regard to the lascivious and lecherous conduct with appellant, James E. Courtney. It shows that Levi M. Courtney sometimes preached, and that James E. Courtney talked and prayed in church. At the time appellee became pregnant she was not twenty-one years old, living as a servant in a family strange to her till she commenced working for Levi M. Courtney, and the very fact that she was pregnant with a bastard child, together with all the facts as disclosed by her evidence, was enough to arouse in the hearts and minds of the jury a well grounded sympathy for her, and to create with the jury an unconscious prejudice in her favor.

Under all the facts in the case, as there can be no recovery for punitive and vindictive damages, we think the damages are excessive.

Judgment reversed, with instructions to grant appellants' motion for a new trial.

BLACK, J., dissents.