WENZ *v.* SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY, and *vice versa.*

1. Where upon the sale of a round-trip ticket a special written contract was made between the passenger and the railway company, and signed by the former, that the ticket should not be good for a return passage unless the holder should identify himself as the original purchaser to the satisfaction of the authorized agent of the railway company at the point of destination, who should officially sign and date in ink and stamp the ticket, and where the consideration for such a contract was expressly stated therein to be the reduced rate at which the ticket was sold, the passenger was not entitled to be transported on the ticket upon his return passage, when he had entirely failed to comply with the above provision of the contract.

2. The testimony in this case failing to show any improper treatment of the plaintiff by the employees of the railway company in expelling her from its train, or that the expulsion was in an improper manner or at an improper place, a verdict for $500 damages was not only excessive but contrary to law and the evidence.

Argued June 2, — Decided July 22, 1899.

Action for damages. Before Judge Norwood. City court of Savannah. October 7, 1898.

*W. G. Brantley, Alexander & Hitch,* and *Spencer R. Atkinson,* for plaintiff. *Erwin, duBignon, Chisholm & Clay* and *William B. Stephens,* for defendant.

LEWIS, J. Mrs. A. E. Wenz brought suit in the city court of Savannah, against the Savannah, Florida & Western Railway Company, claiming damages to the amount of $2,000. She alleged that she purchased a round-trip ticket at the depot of the Brunswick & Western Railway Company in Brunswick, Ga., from that place over said railroad to Waycross, and thence over defendant's railroad to Savannah and return. She used this ticket on her trip to Savannah, and had it in her possession when she undertook to return to Brunswick on the passenger-train of defendant. While a passenger on the train, petitioner handed her ticket to the conductor, who said that it was not in proper form, as it had not been signed by her in the presence of the defendant's agent in Savannah, and that she was therefore not entitled to passage on the train, and unless she paid the regular fare he would have to eject her. Petitioner remonstrated with him, when the conductor became impatient, and in a harsh, sharp, discourteous and offensive manner told petitioner she would either have to pay her full fare or he would put her off the train. He thereupon stopped the train and put her off. The point where she was ejected was not at any station on the line of railroad, but was half a mile distant from any house or station where she could seek refuge, at a sparsely settled neighborhood where vagrants and tramps frequently loitered. She had heavy bundles and valises with her, and was compelled to walk half a mile to the next station, and then return to the same point where she was ejected, several hours later, to take the train to Savannah. She

alleged further that she was greatly annoyed, distressed, and humiliated by being thus ejected. The defendant filed its answer denying its liability, and pleaded a special contract with the plaintiff by virtue of which it was agreed between them that the ticket should not be good for return passage unless the holder identified herself as the original purchaser to the satisfaction of the authorized agent of the Plant System of Railways at destination, which was Savannah. The jury returned a verdict for the plaintiff for $500 ; whereupon the defendant moved for a new trial, on the ground that the verdict was excessive, and on the general grounds that the verdict was contrary to law and the evidence. The court granted the motion on the ground that the verdict was excessive, upon which ruling the plaintiff assigns error in her bill of exceptions. The defendant filed a cross-bill of exceptions, in which it assigns error upon the judgment of the court overruling the other grounds of the motion, that the verdict was contrary to law and the evidence.

The round-trip ticket referred to in the petition and answer was introduced in evidence, and in it appears the following stipulation : "It shall not be good for return passage unless the holder identifies himself as the original purchaser to the satisfaction of the authorized agent of the Plant System of Railways at destination, and when officially signed and dated in ink and duly stamped by said agent this ticket shall then be good for return passage within ......... days from such date ; provided the return trip is made on or before May 18, 1896. I, the original purchaser, hereby agree to sign my name and otherwise identify myself as such whenever called upon to do so by any conductor or agent of the Plant System." The last clause in the contract was as follows : "In consideration of the reduced rate at which this ticket is sold, I agree to the above contract. [Signed] Mrs. A. Wenz, purchaser," witnessed by the agent. It also contained the signature of the passenger traffic manager. It appeared from the testimony that the plaintiff purchased and paid for the round-trip ticket at Brunswick as she alleged, but failed to have the same validated by the agent in Savannah, as stipulated in the above contract.

When about twelve miles from Savannah on her return passage, the conductor, as he was passing a station at which his train did not stop, approached the plaintiff for her ticket. She presented the ticket to him, when he informed her that she had not signed the same in the presence of the agent at Savannah, as required in the contract, and that unless she paid full fare she would have to return to Savannah to have the ticket validated before she could travel on it. She testified that she inquired of him if the money would be refunded if she paid full fare. In one connection she says he replied that it would not, but on cross-examination she said that he replied that he did not know whether it would be paid back or not. It seems that she then elected to get off, for the train was stopped about a half a mile beyond the station, where it was required to come to a standstill on account of a cross track. This place was an open space where people frequently got on and off the defendant's trains, because they did not stop at the depot, which was a short distance off. There was a boarding-house near this place, and a residence between the place and the depot. There were other passengers who had similar tickets with the same defect. One of these testified that he heard the conversation between the conductor and the plaintiff, and that he told her he thought the money would be refunded if she paid full fare. From the entire testimony it is very clear that the plaintiff elected to get off rather than pay the money. There was no evidence whatever tending to sustain the charge in the declaration that the conductor was rough, rude, or discourteous in his manner, nor was there any testimony indicating that the place where plaintiff alighted was at all dangerous or unfrequented. She walked back to the station, and was there informed by the agent that the next train would not stop at this station, but at the crossing where she was ejected; and she went back to the crossing, and experienced considerable annoyance and worry and chagrin at being ejected, and took the next train to Savannah, paying her fare of thirty-five cents to that place.

1. It will be seen from the undisputed testimony in the case that the plaintiff entered into a special contract with the de-

fendant for a valuable consideration, to wit reduced fare, by virtue of which it was stipulated that the ticket she had purchased would not be good for return passage unless she identified herself as the original purchaser to the satisfaction of the agent at Savannah, where the ticket should be officially signed and dated in ink and duly stamped by the agent. It was admitted that there was a failure on her part to comply with this obligation. The validity of such a contract is not an open question in this court. This case can be clearly distinguished from the decision in *Phillips* v. *Georgia R. Co.*, 93 *Ga.* 356. It was there decided that a railway company, without making an express contract with the passenger, after selling a return ticket and receiving pay therefor, can not exact of the passenger as a condition of returning on the ticket that he shall sign it and that the signature shall be attested by a given agent who shall stamp it. That decision was based expressly upon the idea that the entire issue depended upon the question whether there was evidence that such a contract was made, and it was quite clear that the contract which the company intended to create was never in fact created. On page 360 Justice Bleckley says that there was no written evidence of such a contract, and as far as parol evidence went it tended to disprove, rather than to prove, the making of any express contract whatever. There was no question in this case, however, that an express contract was made, and the case comes squarely within the ruling of this court in *Moses* v. *East Tenn. R. Co.*, 73 *Ga.* 356, where it was held that a special contract of this nature between a railroad company and a passenger was valid, and that before the passenger had a right to return upon such ticket he should sign his name at the point of destination as agreed upon, and if the passenger failed to sign as agreed, the company had a right to eject him. Indeed, we do not understand that counsel for the plaintiff in error dispute this principle as a sound rule of law.

2. The only other question remaining in the case is whether or not there was any testimony in the case to authorize a recovery on account of the improper conduct of the conductor in ejecting the plaintiff, or on account of his having stopped his train for this purpose at an improper place. The uncon-

tradicted facts in the record, which we have substantially given above, furnish a complete answer to the plaintiff's contention that there was testimony to support a verdict against the defendant for any amount.   It may seem that this is a hardship upon the plaintiff; and it is ordinarily true that people who are unaccustomed to traveling upon railroads, in purchasing and paying for a ticket, would naturally conclude that there was nothing else to be done to entitle them to passage on it, unless their attention is especially called to such further necessary action on their part.   The railway company in this case had gotten the plaintiff's money for the round trip, and for the conductor to have received the ticket would in point of fact have been no pecuniary loss to the company.   She no doubt thought she was honestly entitled to a return passage, and knew nothing whatever of anything being required of her to validate the ticket for such return.   It would indeed have been a very simple matter for the agent selling the ticket to have directed the passenger's special attention to what was required to be done at the point of her destination before she could return on the ticket.   But the answer to all this is that the law places no such obligation on the railway company or its employees; that they complied in this case with all the requirements of their contract; whereas the plaintiff failed to comply with her agreement.   If there be harshness in applying the rule in such cases, it is a matter for legislative remedy, and not for redress in the courts, which are constrained to determine the differences between litigants according to their legal rights.   We think, therefore, that the verdict in this case was not only excessive, but under the testimony there was nothing to sustain any recovery whatever, and that a new trial should have been granted on the ground that the verdict was contrary to the evidence.

*Judgment on main bill of exceptions affirmed; on cross-bill reversed.   All the Justices concurring.*