## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* COLL.

[No. 5,571.    Filed January 31, 1906.]

1. RAILROADS.—*Tickets.*—*Contracts.*—*Validity.*—A provision in a railroad ticket that such ticket shall not be good for the return trip unless the holder satisfies the agent of the issuing company that he was the original purchaser, is valid and enforceable, but the passenger's right to transportation is not affected by an arbitrary refusal of such agent to be satisfied.    p. 236.

2. SAME. — *Tickets.* — *Identification.* — *Contracts.* — Where the holder of a railroad ticket, providing that the holder shall sat-

isfy the issuing company's agent that he was the original purchaser, by writing his name or by other means, fails to satisfy such agent by writing his name, he has the right to identify himself otherwise. p. 236.

3. PLEADING.—*Complaint.—Railroads.—Tickets.—Wrongful Refusal to Honor.—Torts.—Contracts.*—An action by a passenger on account of the defendant railroad company's wrongful refusal to honor his ticket and his consequent expulsion from the station because he could not "satisfy" defendant's agent that he was the original purchaser thereof, sounds in tort, and not in contract. p. 237.

4. TRIAL.—*Interrogatories to Jury.—Railroads.—Wrongful Refusal to Honor Ticket.*—Answers to the interrogatories to the jury, that plaintiff offered to the agent of the issuing railroad company identification that he was the original purchaser of his ticket only by his signature, do not control a general verdict for plaintiff, where plaintiff was prevented by such agent from offering further means of identification. p. 238.

5. DAMAGES. — *Excessive. — Railroads. — Wrongful Refusal to Honor Ticket.*—Where defendant railroad company wrongfully refused to honor plaintiff's ticket and by reason thereof he was forcibly and roughly expelled from defendant's station and threatened with arrest in the presence of a great number of people, a verdict for $2,000 is excessive, there being no injury to health or loss from business. p. 238.

From Clark Circuit Court; *James K. Marsh,* Judge.

Action by Bernard A. Coll against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*M. Z. Stannard,* for appellant.

*James W. Fortune,* for appellee.

WILEY, J.—From a judgment below against it appellant prosecutes this appeal, and by its assignment of errors it is entitled to have considered and reviewed the action of the trial court (1) in overruling its demurrer to the complaint; (2) in overruling its motion for judgment on the answers to interrogatories; and (3) in overruling its motion for a new trial.

The nature of the action will clearly appear from a statement of the facts pleaded in the complaint. It is

averred that on September 21, 1903, appellee purchased of appellant at its ticket office in the city of Jeffersonville, Indiana, a special excursion ticket to the city of Indianapolis and return; that he paid for it $4.35, which was the regular price; and that before taking passage, in the presence of appellant's ticket agent and at his request, he indorsed his name on said ticket as follows: "B. A. Coll;" that he thereupon boarded one of appellant's regular trains and took passage to Indianapolis; that he tendered to the conductor said ticket, who detached the return coupon therefrom, and returned it to appellee; that on the following day, and before the expiration of the time limit of said return coupon, he presented the same to appellant's ticket agent at Indianapolis, as required by the terms thereof, and in the presence of such agent subscribed his name thereto in the place indicated, in the same manner and style as he had at Jeffersonville, as the original purchaser, and presented and offered it to said agent for his signature as witness to appellee's signature, as provided by the terms thereof; that said agent refused to validate said ticket by attaching his name thereto as a subscribing witness; that he refused to recognize him as the purchaser of the ticket, and declared that appellee's signature was false and a forgery, and that he was not the "B. A. Coll" who had originally purchased it; that thereupon said agent refused to validate said ticket as the ticket purchased by appellee, and marked the same on the back thereof "refused;" that appellee told said agent that he was well known to the employes of appellant operating between Jeffersonville and Indianapolis, and offered the agent proof of his identity, if he would send for some of said employes, but that said agent refused to do so; that thereupon appellee attempted to pass through the gates of said station, known as the "Union Station," for the purpose of requesting one of appellant's employes to accompany him to said agent and identify him, but that he was ejected from the car shed before he could

secure any person to identify him, because of appellant's agent having refused to indorse said ticket as a witness, and "having written the word 'refused' across the back of the same;" that he made another effort to get in the car shed where appellant's employes were located, to get them to identify him, but was refused admission, threatened with arrest, and ejected from the entrance of the shed because said agent refused to validate said ticket; that appellee thereupon purchased a ticket for $3.25, from Indianapolis to Jeffersonville, which he did under protest, and took the train which was about to depart for the latter place; that there were present, both at the ticket office where he tried to have his ticket validated, and at the entrance of the car sheds, "a large number of respectable persons," whose attentions were called to said controversy; that appellee is an honest and respectable citizen; that he did nothing to provoke the action of appellant's ticket agent, gatemen or employes; that he used no improper or profane language, and that by the action of said ticket agent and employes he was greatly chagrined, humiliated and annoyed, by being compelled to pay his fare and having the attention of the strangers attracted to him, to his damage, etc. He made his return coupon ticket an exhibit to his complaint, and a part thereof.

The ticket had printed upon it the following provisions:

"This ticket shall not be good for the return trip unless the holder identifies himself * * * as the original purchaser to the satisfaction of the agent of the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, at station to which this ticket is sold, and when officially executed by said agent it will be good for the return trip to be commenced only on date as stamped on back and canceled under head of 'Return Date' by said agent. * * * The holder will identify himself as the original purchaser of this ticket by writing his * * * name, or by other means, if necessary, when required by conductor or agents."

Conditions of this character in railroad tickets are valid and may be enforced. The authorities are uniform upon this point. 3 Thompson, Negligence (2d ed.), §§2591, 2607, 2628, 3101, 3144; 28 Am. and Eng. Ency. Law (2d ed.), 179; 1 Fetter, Carriers of Passengers, §284; *Scott* v. *Central Park, etc., R. Co.* (1889), 53 Hun 414, 6 N. Y. Supp. 382; *Edwards* v. *Lake Shore, etc., R. Co.* (1890), 81 Mich. 364, 45 N. W. 827, 21 Am. St. 527; *Boylan* v. *Hot Springs R. Co.* (1889), 132 U. S. 146, 10 Sup. Ct. 50, 33 L. Ed. 290, 40 Am. & Eng. R. Cas. 666; *Mosher* v. *St. Louis, etc., R. Co.* (1888), 127 U. S. 390, 8 Sup. Ct. 1324, 32 L. Ed. 249, 34 Am. & Eng. R. Cas. 339; *Kent* v. *Baltimore, etc., R. Co.* (1887), 45 Ohio St. 284, 12 N. E. 798, 4 Am. St. 539, 31 Am. & Eng. R. Cas. 125; *Western Md. R. Co.* v. *Stocksdell* (1896), 83 Md. 245, 34 Atl. 880, 4 Am. & Eng. R. Cas. (N. S.) 510; *Abram* v. *Gulf, etc., R. Co.* (1892), 83 Tex. 61, 18 S. W. 321; *Dangerfield* v. *Atchison, etc., R. Co.* (1900), 62 Kan. 85, 61 Pac. 405; *Bethea* v. *Northeastern R. Co.* (1886), 26 S. C. 91, 1 S. E. 372; *Wenz* v. *Savannah, etc., R. Co.* (1899), 108 Ga. 290, 33 S. E. 970; *Central, etc., R. Co.* v. *Cannon* (1899), 106 Ga. 828, 32 S. E. 874, 14 Am. & Eng. R. Cas. (N. S.) 405; *Sinnott* v. *Louisville, etc., R. Co.* (1900), 104 Tenn. 233, 55 S. W. 836; *Mitchell* v. *Southern R. Co.* (1900), 77 Miss. 917, 27 South. 834; *Central Trust Co.* v. *East Tenn., etc., R. Co.* (1894), 65 Fed. 332. But the passenger's right to transportation is not affected by the arbitrary refusal of the agent to stamp and sign the ticket when requested to do so. *Missouri Pac. R. Co.* v. *Martino* (1893), 2 Tex. Civ. App. 634, 18 S. W. 1066, 21 S. W. 781. In this case so far as the complaint shows, the agent refused to validate the ticket, upon the ground that the signature of appellee to the return coupon did not satisfy such agent that he was the original purchaser of the ticket. If such signature did not reasonably satisfy the agent at Indianapolis, by comparison with the

signature witnessed by the selling agent, that appellee was the original purchaser, he had a right, under the terms of the ticket, to refuse to validate it. But his refusal under such circumstances does not necessarily relieve appellant from liability. It is shown in the complaint that appellee was able to make his identification certain by calling upon some of appellant's employes, who were within reasonable distance, and whom he could procure, if given an opportunity. This was a reasonable request, and should have been granted. He attempted to procure such persons to identify him, and the demurrer admits that he could have done so if the opportunity had been offered him. For the express purpose of procuring such person or persons to identify him at the ticket office, he made two efforts to pass through the gates at the Union Station, out to the sheds where the parties were who could have identified him, but was prevented from so doing by the agents and employes of appellant, and was ejected from the sheds. In the absence of any facts to the contrary, we must presume that this was the only additional means at his command of identifying himself "to the satisfaction" of appellant's ticket agent at Indianapolis, and, under the facts pleaded, he should have been given an opportunity to do so.

The single objection urged to the complaint is that this is an action for breach of a contract, and that it fails to show that appellee performed the conditions of that contract. We can not adopt the view that this is an action upon contract, but, on the contrary, it is one sounding in tort. Conceding that that provision in the contract, requiring appellee to identfy himself to the satisfaction of the ticket agent at Indianapolis before he would be entitled to use the ticket for return passage, was a condition precedent, yet the facts pleaded fully excused him from performing such condition, in that he was prevented from doing so by appellant's agents and employes. While appellant had a legal right to require appellee to identify

himself before using the return coupon, it was under obligation to afford him a reasonable opportunity for doing so, and this it did not do.  *Chicago, etc., R. Co.* v. *Graham* (1891), 3 Ind. App. 28, 50 Am. St. 256.   The complaint was not subject to a successful attack of the demurrer.

The jury had submitted to them three interrogatories which they answered and returned with the general verdict.

4.   Counsel for appellant admit the answers raise the same question presented by the demurrer to the complaint, as they show that the only identification appellee offered to the agent that he was the original purchaser of the ticket, was by writing his name upon it. This being true, the answers are not in irreconcilable conflict with the general verdict, and the motion for judgment thereon was properly overruled.

One of the reasons assigned for a new trial is that the damages assessed are excessive.   The judgment in favor of appellee was for $2,000.   The evidence shows that appellee

5.   was the original purchaser of the ticket; that he used it in coming from Jeffersonville to Indianapolis; that about fifteen or twenty minutes before a regular train was to leave Indianapolis for Jeffersonville he presented himself at appellant's ticket office at the Union Station, and tendered his ticket to the ticket agent for validation; that he wrote his name on the ticket in the presence of the agent; that the agent refused to stamp and approve it, for the reason that the two signatures of appellee were not similar; that the agent demanded further evidence of his identification; that appellee informed him that he knew appellant's agents and employes who ran said train between Jeffersonville and Indianapolis, and that if he could get out in the train sheds he could get some of them to identify him; that he went to the gate leading to the sheds, exhibited his ticket to the gatetender, who advised him that it was not good; that he told the gatetender that he knew that, but wanted to go out and get the conductor, who was about fifty feet

away, to identify him; that he got through the gate; that the gatetender called the police, and two of them grabbed him "roughly" and put him on the outside of the shed. Appellee testified that after that, as he had some little time, he went outside the station and came along the track, and "when I got up there two more policemen met me and insisted on my getting out, and said if I did not they would arrest me." He testified that he then went back to the ticket office, bought a ticket for $3.25, and went home. There were a number of people in and about the depot, but there is not a word of evidence indicating that their attention was attracted toward appellee, by what was said and done. Appellee did not receive any bodily injury. He was put to but little inconvenience, and but small additional expense. He left Indianapolis on the train that he had intended to take, and got home at the time he expected to. Appellant's agent at Jeffersonville heard of the occurrence within a day or two, and offered to refund to appellee the amount he paid for his passage from Indianapolis to Jeffersonville, which he refused to accept. We are impressed with the view that the facts in this case fall far short of warranting so large a recovery. We are unable to understand upon what reasonable basis a judgment for $2,000 can rest under the facts here. We fully appreciate the fact that there is no exact mathematical rule by which to calculate damages in a case of this character, but we know that there should be some reasonable basis for their admeasurement. When it appears to the mind of an appellate court, upon an examination of the evidence, that the damages assessed are so excessive and unjust that the jury in assessing them must have been influenced by prejudice, passion, or partiality, or have proceeded upon a wrong principle, a new trial will be ordered. *Eve* v. *Rogers* (1895), 12 Ind. App. 623; *Courtney* v. *Clinton* (1897), 18 Ind. App. 620; *Marsteller* v. *Crapp* (1878), 62 Ind. 359; *Dayton, etc., Traction Co.* v. *Marshall* (1905), 36 Ind. App.

491.   When considered in the light of the facts disclosed by the evidence, the amount of damages assessed is a shock to the unprejudiced mind.   It thus appearing to the court that the damages are excessive, we feel that the judgment should not stand.

Counsel have discussed other questions arising under the motion for a new trial; but, in view of the conclusion we have reached, they need not be considered.

Judgment reversed, and the trial court is directed to sustain appellant's motion for a new trial.

Roby, C. J., Black, P. J., Robinson and Meyers, JJ., concur.   Comstock, J., absent.