BOLING v. St. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Division Two, June 6, 1905.

1. **APPELLATE JURISDICTION: Constitutional Question: Nine-Jury Law.** An appeal taken in a case in which the validity of the adoption of the constitutional amendment authorizing nine of the jury to render a verdict in a civil case in the circuit court was properly brought in question, if taken before the adoption of that amendment was declared to be valid, is to this court; but if not taken before, the appeal is not to this court on that ground.

2. **RAILROAD: Ticket: Contract.** A railroad ticket for transportation over a railroad from one point to another, paid for at the full or regular ordinary rate, is not a contract within itself, but a mere token of evidence of a contract which the law creates and which lies behind the ticket. The law makes the contract and regulates the reciprocal rights and duties of carrier and passenger.

3. ————: ————: ————: **Commutation or Special Ticket: Reasonable Regulations.** But when the ticket on its face purports to be a special contract of carriage, and is sold at a reduced rate, then the ticket itself constitutes the contract between the carrier and passenger. And provisions limiting the time when it shall be good, that it shall be stamped with the date when the return passage commences by the ticket agent at the place where the return is to begin, that the holder must identify himself to such agent, the signing and attestation to be indicated by punched marks thereon, and that such ticket shall only be good for a continuous passage commenced on that date, are reasonable regulations and binding on the holder of the ticket.

4. ——: ——: ——: ——: ——: Mistake of Agent. Plaintiff bought a special round-trip ticket at a reduced rate form Joplin, Missouri, to Chickamauga, Georgia, which recited that it would "not be good for return passage unless the holder identifies himself as the original purchaser to the satisfaction of the ticket agent at destination point by signature or otherwise" and that "it will then be good for continuous return passage of the original holder, which shall be commenced on date of execution, as punched in right hand margin thereof," and "unless all the conditions on this ticket are fully complied with, it shall be void." On her arrivel at Chickamauga, finding her nearest point for taking a train to Chattanooga would be on another road, she inquired of the agent of the road on which she had come at Chickamauga if she could not be identified and have her ticket stamped at that time, so she would not have to return to Chickamauga for that purpose when she was ready to return to Missouri. He assured her that she could, although advised that she had just arrived, and thereupon she signed the ticket and he punched it with that date. Fourteen days later she took a train on another road at the near-by station and began to use the ticket at Chattanooga, and it was honored to St. Louis. There the gate agent punched the ticket, and she boarded defendant's train for Joplin, but the conductor refused to honor the ticket, and demanded money for her fare, and she got off, or was put off, and sues for damages. *Held*, that she cannot recover for the ejection; that the provisions of the contract were reasonable, and the fact that she did not read them does not alter the case; that the defendant company was not responsible for the wrongful assurances of the agent at Chickamauga, because the contract, which must control, specifically said that her return must be commenced on the date stamped in the ticket and must be continuous; and that the agent at Chickamauga had no authority to bind the defendant by waiving any of the contract provisions.

5. ——: Special Ticket: Connecting Lines: Agent. The rights of a passenger who purchased a through ticket over several different roads and the duties and responsibilities of the different companies are substantially the same as if the ticket had been purchased at the office of each company separately, unless there is something in the contract making the first company responsible beyond its own line. And where the ticket provides that it must be stamped by the agent at the destination point with the date the return commences, and he wrongfully stamps it with a previous date, for the accommodation of the passenger, the company selling the ticket is not chargeable with his act, nor is he in waiving that provision the agent of the selling company.

6. ———: **Ejection of Passenger: Insults.** Although a conductor may legally eject a passenger from the train because of the fact that her ticket has expired, he cannot use insulting or abusive language towards her in doing so. And although she may recover no damages for her ejection, she may recover compensatory damages from the railroad company for her injured feelings and humiliation, but nothing in the way of punitive or exemplary damages.

Transferred from St. Louis Court of Appeals.

REVERSED AND REMANDED.

*L. F. Parker* and *John T. Woodruff* for appellant.

(1) This action sounds in tort and not in contract. It is predicated on the general common law duty that the defendant as a common carrier owes to one rightfully on its train as a passenger. Wood v. Railroad, 32 Wis. 298; Bank v. Brown, 3 Wend. 158; Stone v. Railroad, 47 Iowa 88; Wabash v. Railroad, 42 Wis. 23. (2) The general rule is that an ordinary ticket does not constitute the contract of carriage, but it is a mere token, or the evidence of a contract which the law creates and which lies back of and behind the ticket. But when, as here, the ticket on its face purports to be a contract of carriage, and is based upon a valuable consideration—that is, sold at a reduced rate—then it constitutes the contract of carriage between the parties. Cloud v. Railroad, 14 Mo. App. 136; Mosher v. Railroad, 127 U. S. 390; Boylen v. Railroad, 132 U. S. 146; Watson v. Railroad (Tenn.), 56 S. W. 1024; Edwards v. Railroad (Mich.), 45 N. W. 827; Bowers v. Railroad (Pa.), 27 Atl. 893; Rogers v. Railroad (N. J.), 34 Atl. 11; Dangerfield v. Railroad (Kan.), 61 Pac. 405; Bethea v. Railroad, 26 S. C. 356; Moses v. Railroad, 73 Ga. 356; Hutchinson on Carriers, sec. 580B. (3) The limit of the ticket offered by plaintiff having expired upon its face, it was the right and duty of the conductor to compel her to pay her fare or retire from the train.

The rightfulness or wrongfulness of his action is to be determined solely from the face of the ticket. Frederick v. Railroad, 37 Mich. 1342; Bradshaw v. Railroad, 135 Mass. 407; Yorton v. Railroad (Wis.), 11 N. W. 482; Townsend v. Railroad, 56 N. Y. 297; Woods v. Railroad, 48 Mo. App. 125; Hufford v. Railroad (Mich.), 18 N. W. 580; Shelton v. Railroad, 29 Ohio St. 214; Crawford v. Railroad, 26 Ohio St. 580; Perry v. Railroad, 58 Mo. App. 75; Mosher v. Railroad, 127 U. S. 390; Magee v. Reynolds, 23 So. 68; Pauilin v. Railroad, 52 Fed. 197; Hall v. Railroad, 15 Fed. 57; Peabody v. Railroad, 26 Pac. 1053; Wakefield v. Railroad, 117 Mass. 544. (4) The court clearly erred in admitting evidence, over defendant's objection, that the conductors on the other railroads, the gatemen at the Union Depot in St. Louis, Pullman conductors and porters examined and accepted the ticket. This has been many times decided. Cloud v. Railroad, 14 Mo. App. 136; Bowers v. Railroad, 27 Atl. 893; Dangerfield v. Railroad, 61 Pac. 405; Boylen v. Railroad, 132 U. S. 146; Hill v. Railroad, 63 N. Y. 101; Stone v. Railroad, 47 Iowa 82; Wakefield v. Railroad, 117 Mass. 544; Diederich v. Railroad, 71 Pa. St. 432. (5) If this be treated as an action on a contract of carriage, then the court's instruction as to the measure of damages is clearly wrong, as the humiliation, shame, etc., suffered by plaintiff cannot be considered and has no place in such an action. Stone v. Railroad, 47 Iowa 82; Walsh v. Railroad, 42 Wis. 23.

*Vaughan & Coltrane* for respondent.

(1) Even if the ticket in this case had not been signed by Mrs. Boling and validated by the signature and stamp of the agent at Chickamauga, on the day of the return passage, it was still good and entitled her to passage over the defendant's railroad. For the reason that such agent was the representative of the defendant

company at that point and the only one it had there, he was its general agent for the purpose of validating tickets at that point, and as such he had power to waive that provision of the ticket requiring validation on the day when return passage began.   Mechem on Agency, sec. 6.   (2)   That the face of the ticket alone is to determine the passenger's rights, and if it alone does not authorize his transportation, the conductor is justified in expulsion, is not the law of this State and is not the law as fixed by the weight of authority in this country. McGinnis v. Railroad, 21 Mo. App. 399; Cherry v. Railroad, 52 Mo. App. 499; Railroad v. Deloney, 65 Ark. 177; Forsee v. Railroad, 63 Miss. 66; Railroad v. Reynolds, 55 Ohio St. 370; Hufford v. Railroad, 64 Mich. 634; Murdock v. Railroad, 137 Mass. 239; Railroad v. Gaines, 99 Ky. 411; Head v. Railroad, 79 Ga. 358; Railroad v. Mackie, 71 Tex. 491; Railroad v. Hennigh, 39 Ind. 509; Railroad v. McDonough, 53 Ind. 289; Railroad v. Fix, 88 Ind. 381; Railroad v. Riley, 68 Miss. 765; Railroad v. Bembry, 16 Atl. 67; Railroad v. Pauson, 70 Fed. 585; Railroad v. Winter, 143 U. S. 60; Muckle v. Railroad, 79 Hun 33; Sloane v. Railroad, 111 Cal. 668; Railroad v. Dalby, 19 Ill. 352; Railroad v. Rogers, 28 Ind. 1; Railroad v. Rice, 64 Md. 63.   (3) A railroad company will not be heard to urge the action of its agent as an excuse for disregarding its own ticket and ejecting a passenger. Head v. Railroad, 79 Ga. 358; Railroad v. Bray, 125 Ind. 229; Railroad v. Dougherty, 86 Ga. 744. Passengers have the right to rely upon the statements of agents made with reference to matters which lie within the line of their duty. Murdock v. Railroad, 137 Mass. 293; Railroad v. Fix, 88 Ind. 385; Palmer v. Railroad, 3 S. C. 580; Barnham v. Railroad, 63 Me. 299; Arnold v. Railroad, 115 Pa. 135; Railroad v. Winter, 143 U. S. 60; Railroad v. Dougherty, 86 Ga. 744.   (4) A provision in a ticket requiring identification at destination and new execution may be waived. Taylor v. Railroad, 99 N. C. 185.   (5) The ticket if good

upon its face may be a justification of the conductor as between him and his company, or as between him and a passenger, but not as between the company and its passenger. Railroad v. Reynolds, 55 Ohio St. 370; Railroad v. Dougherty, 86 Ga. 744; Railroad v. Cates, 41 N. E. 712. (6) Gillis, the conductor, did not, in fact, refuse the right of carriage to Mrs. Boling, on the ground that the ticket had not been rightly stamped or signed at Chickamauga, but his real ground was because he believed it to be a scalper's ticket.

GANTT, J.—This is an action by Mrs. Julia M. Boling, who resides at Claremore, Indian Territory, against the defendant company, for damages for being ejected from one of its trains at Pacific, Missouri, April 6, 1900. The petition alleges the purchase of a railroad ticket from the defendant company at Joplin, Missouri, entitling her to passage from Joplin to Chickamauga, Georgia, and return, and then alleges that "before beginning her return passage, said ticket was duly signed by her, and her signature witnessed and the same countersigned by the agent of the defendant's connecting line at Chickamauga, Georgia, and that at the times hereinafter stated, said ticket entitled plaintiff to return over said lines of railway to Joplin, Missouri; that she began her return passage on the 5th day of April, 1899, and on the night of April the 6th, 1899, at St. Louis, Missouri, she took passage upon and entered one of the defendant's trains leaving St. Louis, the same being a regular passenger from said city to Joplin; that near a station of defendant's said railway, called Pacific, and while she was rightfully on said train, the conductor in charge thereof rudely and wrongfully deprived her of said ticket and the use thereof by taking it up, and denying her transportation thereon, and wrongfully, willfully and insultingly expelled and ejected her from said train; that in consequence she was compelled to use the small amount of money she

had to obtain other transportation to her home, and being among strangers, was compelled to go without food the next morning, and was put to great expense, trouble and inconvenience, was injured in body and mind, and suffered great shame and humiliation, on account of all of which plaintiff says she has been damaged in the sum of five thousand dollars.''

In its answer the defendant admits it is a railroad and owns and operates the line of railways between St. Louis and Joplin, and is engaged in carrying passengers for hire thereon, but denies each and every other allegation in said petition contained.

The evidence in substance was that plaintiff, a married lady, was a resident of the town of Claremore, Indian Territory, on March 20, 1900, and on that date, went to Joplin, Missouri. She desired to go to Chickamauga, Georgia, to visit her sister, and bring back with her a little niece, five or six years old; she learned that the Frisco road, the defendant, herein, had on sale at Joplin excursion tickets from Joplin to Chickamauga and return; she endeavored to obtain one of these tickets from the agent at Claremore, but was unable to do so, and desiring to see Joplin, she went to that city, and there purchased one of those excursion tickets from Joplin to Chickamauga and return. The ticket was sold at a reduced rate. This ticket, in large type, reads, ''Good for one first-class passage to Chickamauga, Georgia, and return, when officially dated, stamped and presented with coupons attached subject to the following contract:

''1st. In selling this ticket and carrying baggage hereon, this company acts as agent and is not responsible beyond its own line.

''2d. This ticket will be good to leave starting point only on date of sale, as stamped thereon. It will then be good for going passage within fifteen days from

date of sale as per final going limit punched in left-hand margin by selling agent.

"3d.    Stop-overs will be allowed on going passage within the going of fifteen days.  No stop-overs will be allowed on return trip.

"4th.    It will not be good for return passage un-less the holder identifies himself as the original pur-chaser to the satisfaction of the ticket agent at destina-tion point by signature or otherwise, on any day within final limit of twenty-one days from date of sale, as stamped on back or written below.  It will then be good for continuous return passage of the original pur-chaser, which shall be commenced on date of execution, as punched in right-hand margin hereof."

The 9th clause is, "Unless all the conditions on this ticket are fully complied with, it shall be void.

"I hereby agree to all the conditions of the above contract.

"J. M. BOLING, Purchaser.

"Witness, J. A. Glassey, Selling Agent.

"Date of sale March 20th, 1900."

The plaintiff commenced her journey from Joplin on the 20th of March, 1900, and arrived in Chicka-mauga, Georgia, on the 22nd, as indicated by punched marks on the left-hand margin of the ticket.  On ar-riving at Chickamauga, Georgia, on the 22nd of March, and intending to visit relatives, some twelve miles in the country, and near Kingston, on another railroad leading into Chattanooga, Tennessee, and not wishing to return by way of Chickamauga, she inquired of the station agent of the Chickamauga, Rome & Southern Railroad, the last road over which she traveled to Chickamauga, if she could be identified, and have her ticket stamped by him at that time, so that she would not have to return to Chickamauga for that purpose when she got ready to return to her home in the Indian Territory.  He assured her that she could, and there-

upon she signed the ticket before the ticket agent at that place, and he attested her signature, and dated the same March 22nd, 1900. This agent at Chickamauga was advised that she had just arrived, because she called on him for her baggage, which it appears had not arrived, but had been left in Chattanooga, when at her request he had the baggage sent from Chattanooga to Kingston direct on another road. When plaintiff got ready to return to her home, she did not return to Chickamauga, but started from Kingston and went to Chattanooga. She began to use her ticket for return passage between Chattanooga and St. Louis, and it was honored by the other railroads until she reached St. Louis, on April 5, 1900. On the evening of April 6th, plaintiff purchased of the Pullman Palace Car Company a sleeping car berth for herself and her sister, Miss Davis, and the little niece, and was allowed to pass through the gate at the Union Station on the presentation of her ticket and into the sleeping car attached to one of defendant's passenger trains, bound for Monett, Missouri. The conductor of this train was John Gillis. After the train started, and near Valley Park, a station some seventeen miles west of St. Louis, the conductor, Gillis, began taking up tickets in this sleeping car. Plaintiff's sister, Miss Davis, had her own and the plaintiff's said return ticket and when the conductor came to her, she handed both to him, and thereupon he pronounced the ticket invalid. And at this point there is a conflict in the testimony as to what occurred between plaintiff and the conductor. The evidence of the plaintiff tends to show that after the conductor had seen plaintiff's ticket he insinuated that she had not come by it properly; that he refused to make any effort to find out whether the ticket was good; that he disputed the plaintiff's word; that his manner was rude and insulting, and he wound up by confiscating the ticket and directing his porter to see that the plaintiff got off the train at Pacific; that when they reached

Pacific, the porter came and got her grips and told her this was the place to get off, and that she, her sister and little niece got off the train and went into the station at Pacific, and plaintiff purchased a ticket to Monett, and she and her sister and little girl took the next train, and arrived at Monett at the same time and made the same connections for her home in the Territory that she would have made had she remained on the train on which she first started.

On the part of the defendant the conductor, Gillis, testified that he refused to take the ticket because it had expired according to the limitations printed thereon, and that when he took it he gave her a receipt and explained to her fully that the rules of the company prevented him from permitting her to ride on the ticket, and that she must pay her fare, and if she did not have the money to do so, he would take her baggage check as security, and send it to the general office with the ticket with an explanation, and that if it was all right on reaching her destination at Claremore, she could get her baggage, and if it was not all right, she could call at the station in Claremore and pay the amount of fare and get her baggage; that he endeavored to persuade her to do this, and then left her and went to the front of the train to finish taking up tickets, and supposed she would reconsider and pay her fare, though she had positively refused to do so; that he was at the front end of the car when they reached Pacific, and did not see her leave the train, and did not know that she and her sister had left the train until he went into the sleeper after the train left Pacific; that he did not direct the porter to see that she got off at Pacific, and that the train porter did not assist her in getting off, and had nothing whatever to do with the matter.

As to this latter statement the conductor is corroborated by the Pullman conductor, who testified that he told her that if she intended to get off this was Pa-

cific, and upon being informed by her that she intended to get off and take the next train, he and the Pullman porter assisted them off the train, the porter carrying the baggage, and he the little girl; that neither conductor Gillis nor the train porter was present at the time plaintiff left the train; that he refunded or transferred her Pullman ticket so she would have the full benefit of it on the next train.

The conductor denied that he used any rude or insulting language to the plaintiff.

Miss Davis testified that when the controversy was going on between her sister, the plaintiff, and the conductor, she went over to where her sister sat, and her sister said to her, "The conductor says my ticket is no good, and wants to make me pay fare," and thereupon the conductor turned to witness and began to explain about scalpers, how expert they had become in fixing up tickets and fooling the conductors, and she said to him, "That is a scalper's ticket?" He said, "Yes, madam," and I says, "So you say your agent did not sell this ticket to her at Joplin?" and he said, "No, sir, he did not," and I said, "You are not a gentleman to dispute a lady's word like that." She testified that his tone "was just very insulting," and that in this way he accused her sister of telling a falsehood.

The evidence tended also to show that under the rules of the company it was the duty of the conductor to refuse to honor the ticket and compel the passenger to either pay fare or retire from the train at the next station, and that if he had violated this rule and accepted the ticket he would have had to pay for it out of his own pocket.

Under the instructions of the court the jury returned the issues in favor of the plaintiff, allowing her one hundred and twenty-five dollars as damages. Nine of the jurors concurred in this verdict and three were against it.

Other facts may be noted in the course of the opinion.

I. Under the recent decisions of this Court in Banc and of both divisions, had this appeal been taken to or transferred to this court after the decisions in Russell v. Croy, 164 Mo. 69, and Gabbert v. Railroad, 171 Mo. 84, in which it was held that the amendments to article 10 of the Constitution by adding thereto two sections to be known as sections 22 and 23, and to section 28 of article 2 were duly and legally adopted so far as the publication of the notices of the election and the submission of the same to the qualified voters was concerned, this appeal should be remanded to the St. Louis Court of Appeals, as the sole ground upon which it is transferred to this court is that the amendment to section 28 of article 2, permiting nine jurors in a civil case to make a verdict, was never legally dopted, but inasmuch as the appeal when taken fairly raised the constitutional question whether such amendments had in fact become a part of the Constitution, and was taken prior to the settlement of that question by this court in the cases above cited, we will retain the appeal as properly in this court; otherwise, we would not. [Lee v. Jones, 181 Mo. 291; Carpenter v. Hamilton, 185 Mo. 603.]

II. On both sides it is conceded that this action is one sounding in tort, to-wit, the wrongful ejection of plaintiff from defendant's train on the night of April 6, 1900, by one of the defendant's conductors in charge thereof. The allegation as to the contract of transportation, to-wit, the ticket described in the petition, is matter of inducement to show that plaintiff was rightfully on the train and hence that her expulsion was unlawful. [Book v. Railroad, 75 Mo. App. 604; Railroad v. Reynolds, 55 Ohio St. 370; Railroad v. Roberts, 91 Ga. 513.]

At the root of the case lies the question whether the

ticket which plaintiff offered to the conductor entitled her to passage on the train, or by its terms had expired, and, therefore, the conductor was justified in demanding fare to Monett, and upon plaintiff's refusal to pay fare, to require her to leave the train. The question is by no means a new one. It may, we think, be safely stated that the general rule is that when a passenger purchases a ticket for transportation from one point to another over the road of a common carrier and pays full or regular ordinary fare, the ticket is not intended as a contract itself, but as a mere token of evidence of a contract which the law creates and which lies behind the ticket. In such case the law makes the contract and regulates the reciprocal rights and duties of both carrier and passenger, and the ticket is a mere token that such contract exists and under it the passenger is entitled to be carried to and from the points named, without regard to time limit printed upon it. [Railroad v. Turner, 100 Tenn. 213; Potter v. The Majestic, 23 L. R. A. 746, note; Watson v. Railroad, 56 S. W. 1024.]

On the other hand, it has been held by a number of the highest courts in the United States, including the Supreme Court of the United States, that when, as in this case, the ticket on its face purports to be a special contract of carriage, and is based upon a valuable consideration, that is to say, sold at a reduced rate, then the ticket itself constitutes a contract of carriage between the parties, and the provision limiting the time within which it shall be good, and providing that it shall be stamped as of the date when the return passage is commenced, by the ticket agent at that place, and that the holder of the ticket must identify himself or herself to such agent as the original purchaser thereof, and sign the same in his presence, and the signing and attestation dated and indicated by punched marks on the ticket, and that such ticket should only be good for a continuous return passage

commenced on that date, is a reasonable regulation and binding upon the holder of such a ticket.

Thus, in Mosher v. Railroad, 127 U. S. 390, it appeared that the St. Louis, Iron Mountain & Southern Railway Company owned a railroad from St. Louis to Malvern, Arkansas, and the Hot Springs Railroad Company owned and operated a railroad from Malvern to Hot Springs, Arkansas, and the Iron Mountain Company sold a ticket at a reduced rate of fare for a passage from St. Louis to Hot Springs and return, and the ticket contained stipulations by which the purchaser agreed that in selling the ticket, the St. Louis, Iron Mountain & Southern Railway Company acted only as agent and was not responsible beyond its own line, and that the ticket was good for going passage only five days from the date of sale stamped on the back and written below, and would not be good for return passage unless the holder identified himself as the original purchaser to the satisfaction of the authorized agent of the Hot Springs Railroad at Hot Springs, within eighty-five days from the date of sale, and when officially signed and dated in ink and duly stamped by said agent, the ticket should then be good only five days from said date, and it was expressly agreed that the purchaser would, whenever called upon, identify himself to any conductor or agent of the lines over which the ticket read, and that no agent or employee of any of the lines named in the ticket had any power to alter, modify or waive any of the conditions named on the ticket, and it appeared that the plaintiff went to Hot Springs, and within the time limited by the ticket, desiring to return to St. Louis, presented himself and said ticket at the business and ticket office and depot of the Hot Springs Railroad, in the city of Hot Springs, during business hours, and a reasonable time before the departure of its train for St. Louis, for the purpose of identifying himself as the original purchaser of said ticket, and of having the

same officially signed, dated and stamped by said
agent, but the Hot Springs Railroad Company failed
to have said agent there at any time between the time
when the plaintiff so presented himself and his ticket
and the time of departure of the train, whereby as it
was alleged, the Iron Mountain Company and its agent
and the agent of the Hot Springs Railroad at Hot
Springs, without any just cause or excuse, failed to
identify plaintiff as the original purchaser or to offic-
ially sign, date and stamp said ticket, and the plaintiff
thereupon boarded the train of the Hot Springs Rail-
road and was carried thereby to Malvern, where on the
same day, he boarded a regular passenger train of the
Iron Mountain Company for St Louis, and upon the
conductor demanding his fare, presented his ticket,
and informed the conductor of the failure of the agent
at Hot Springs to be at the office so that he could iden-
tify himself, and offered to sign his name and other-
wise identify himself to the conductor, and demanded
to be carried to St. Louis by virtue of his said ticket,
but the conductor refused and put him off the train,
it was held that the ticket was a valid contract and
binding upon the holder thereof, and by its express
terms the plaintiff had no right to a return passage
under the ticket unless it bore the stamp of the agent
at Hot Springs, and that such a stamp was made by the
contract a condition precedent to the right of a return
passage, and no agent or employee of the defendant
was authorized to waive that condition. It was held
that by the first condition of the contract, the defend-
ant was not responsible beyond its own line, and was
not responsible to plaintiff for failing to have an agent
at Hot Springs; that by the contract, the agent who
was to identify plaintiff and stamp his ticket was the
agent of the Hot Springs Railroad Company, and it was
the duty of that company to identify plaintiff and not
the defendant; that the conductor of the defendant's
train had no authority to dispense with the want of

such stamp, or to inquire into the previous circumstances.

The rule announced in that case was reasserted in Boylan v. Railroad, 132 U. S. 146, and it was further held that the purchaser of a ticket from a railroad company at a reduced rate of fare for passage to a certain station and back, containing a contract signed by him that the ticket should not be good for return passage unless stamped by the agent of the company at that station, and that no agent of the company was authorized to alter or modify any condition of the contract, was bound by those conditions, whether he knew them or not, and neither the action of the baggage master in punching the ticket and checking the plaintiff's baggage, nor that of the gateman in admitting him to the train could bind the defendant to carry him or estop it to deny his right to be carried.

To the same effect see Watson v. Railroad (Tenn.), 56 S. W. 1024; Edwards v. Railroad, 81 Mich. 364; Bowers v. Railroad, 27 Atl. 893; 4 Elliott on Railroads, sec. 1593, p. 2484; Pennington v. Railroad, 62 Md. 95; Railroad v. Stockdale, 83 Md. 245, and cases cited; Moses v. Railroad, 73 Ga. 356.

In the last-cited case the circumstance noted by the plaintiff on this appeal, to-wit, that the St. Louis, Nashville and Chattanooga Railroad Company accepted plaintiff's ticket on her return and waived the limitations as to time in the contract, was commented on by C. J. JACKSON, who said: "The ticket passed him over two roads; but each had a right to stand on the contract. If one passed him, the other was not bound thereby to pass him also, in the teeth of the contract he had made." See, also Dangerfield v. Railroad (Kan.), 61 Pac. 405; Comer v. Foley (Ga.), 25 S. E. 671; Abram v. Railroad, 83 Tex. 61; Rahilly v. Railroad, 66 Minn. 153.

It is asserted, however, by the plaintiff in this case, that this line of authority is not the law in this

State, and we are cited to McGinnis v. Railroad, 21 Mo. App. 399, and to Cherry v. Railroad, 52 Mo. App. 499, as sustaining this contention. It is evident, however, from the reading of those cases that neither of them reached the point now under discussion. In the Cherry case, the passenger had purchased a first class passenger ticket which read, ''Good to stop over at all points.'' It was held that this justified the passenger in stopping off at a station short of his destination and subsequently within the life of the ticket taking another train to his destination and though on his presentation to the conductor of his ticket with notice of his intention to stop over, the conductor took up the going coupon and gave no check or token in lieu thereof, the passenger's rights were not affected and the same conductor with a knowledge of all the facts was not justified in ejecting him from the train on his subsequent resumption of his journey. With that case we are entirely satisfied. The passenger had complied with every condition on his part and had violated no rule of the company, and the same conductor who had wrongfully taken up the going coupon without preserving to the passenger any evidence of his right to resume his journey after the stop over, with a full knowledge of all the facts and a personal acquaintance with the passenger, wrongfully ejected him.

In the McGinnis case, the passenger held a return ticket, but the date of it was blurred and the conductor was of the opinion that there had been an alteration in the date, and for that reason refused to honor the return coupon, but the ground of recovery was that it turned out that the blurring of the ticket was caused by the defendant's own agent in dating it when he sold it, and the rude and offensive and insulting manner of the conductor in ejecting the plaintiff. That case likewise does not reach the point before us.

In Railroad v. Deloney, 65 Ark. 177, the authorities are collected with much industry and the conclu-

sion reached that the efforts of the court to reconcile the conflicting views as to the right of the conductor, in collecting tickets and fares, to rely entirely upon the face and appearance of a ticket presented to him, in determining his duty as to the acceptance of the same, had not met with any degree of success. In that case it was held that, notwithstanding the conductor had only carried out the company's rules and regulations, and that they were reasonable, and he, therefore, was blameless, personally, inasmuch as the company which was sued, through its ticket agent, acting for it, had been guilty of doing that which produced the injury to the plaintiff, it was liable for such neglect and could not shield itself behind the faithfulness of its servants, the conductor. We think that decision was unquestionably correct and was but the application of the common law of principal and agent. In that case the company was rightfully held responsible for the natural and reasonable consequence of the neglect of its own agent, but that case does not reach the question before us, whether the defendant company in this case is responsible for the neglect of the plaintiff to read the contract on her ticket, and in not complying therewith, and the mistake or negligence of the agent of the connecting line at Chickamauga, Georgia. It is plain that no such question was involved in the Deloney case, supra.

We have laboriously gone through the long line of cases cited to us by respondent, and find that in most of them the action was directly against the company whose agent had been guilty of the neglect or negligence which produced the inconvenience and injury to the passenger, or were cases in which the ticket was apparently regular on its face and the passenger misled thereby, and various other circumstances in which it was held that the defendant company was liable for the wrongful and negligent acts of its own servant, and in our opinion, without attempting a review

of all those cases or reconciling them, they are clearly distinguishable from the facts upon which this case is bottomed, and the correct doctrine is stated in Mosher v. Railroad, 127 U. S. 390, and Boylan v. Railroad, 132 U. S. 146. We think the provisions of the ticket, in this case, were reasonable regulations and that the agent at Chickamauga had no authority to bind the defendant company by waiving any of the contract provisions which enured to the benefit of all the roads which were parties to that contract, and the fact that the other roads waived the conditions in no manner affected the defendant's rights. By the terms of the contract, plaintiff was only entitled to a continuous return passage within the limits of the ticket commencing on the date that she was identified and the ticket stamped and punched at Chickamauga for the return passage, and consequently when it was presented to the conductor of defendant's road on the 6th of April, 1900, it had expired according to the limitations plainly written thereon, and did not entitle plaintiff to a passage from St. Louis to Monett, and the conductor was justified in refusing to accept the ticket for passage between those points. And it is no justification of plaintiff's insistence that she had not read the contract which she had signed. The stipulations of the contract were plainly printed on the face of the ticket in a way not calculated to escape observation, and the plaintiff's own evidence shows that she knew she was receiving a special rate, and went to Joplin for the express purpose of getting a ticket for a reduced fare, and under the circumstances it was her duty to read it when she received it, and in the absence of proof of fraud, imposition or deceit, the law presumes she had knowledge of its contents, and must be held to have assented to the terms thereof. [Snider v. Adams Ex. Co., 63 Mo. l. c. 383; Watson v. Railroad, 56 S. W. 1024.]

Hence, the instruction given for the plaintiff as to

the right of the plaintiff to rely upon the statement made by the agent of the Chattanooga, Rome & Southern Railroad that she could be identified and have said ticket stamped on the 22nd of March, 1900, and it would be good for her return passage at a later date, was erroneous.

But notwithstanding plaintiff had no right to passage over the defendant's road by virtue of said ticket, after the same had expired by virtue of its limitations and the failure of plaintiff to comply with the provisions of her contract with defendant, and while we think that when plaintiff was notified of the invalidity of the ticket and refused to pay the fare to Monett, the conductor had the right to remove her from the train, he had no right to use unnecessary and insulting language to her and thereby hurt her feelings and humiliate her, and if he did so, she was entitled to recover compensatory damages for such injured feelings and humiliation, but nothing in the way of punitory or exemplary damages. There is no pretence that the conductor offered the plaintiff any personal violence, or that any other servant of the company did; on the contrary it appears that the Pullman conductor and his porter rendered her every assistance that was possible when she left the train. If plaintiff's evidence is to be accepted, her leaving the train in obedience to the command of the conductor to the porter to see that she got off at Pacific, must be regarded as an ejection from the train, and she very properly avoided the humiliation of being forcibly removed from the train; if, however, plaintiff left the train of her own free will and accord and against the advice of the conductor and refused to remain on the train and permit the conductor to hold her baggage check as security for her passage, if the general officer of the company should agree with the conductor that her ticket had expired, or if they should decide the ticket was good, then she need not pay any other fare, then there was no ejection from

the train within the meaning of the law, and plaintiff
has no cause of action whatever against the company.
That plaintiff suffered no appreciable damages in the
way of delay in reaching her home, or of any discom-
fort by changing from one train to another, is perfectly
apparent.

From the statement of facts in this case it must
be apparent that the liability of the defendant in this
case hinges upon the consideration whether the agent
at Chickamauga of the connecting lines was the agent
of the defendant in this case, by reason of the contract
of carriage over the several lines mentioned in the
ticket, and what force is to be accorded to the clause
stipulating that the defendant in this case acted simply
as agent and was not responsible beyond its own line.
If the defendant is to be held as agent for all the other
roads over which this ticket reads, then there is much
reason and authority for holding it liable for the mis-
leading representation of the agent at Chickamauga
waiving the agreement that the ticket should be
stamped and the passenger identified on the day of the
commencement of the return passage. If, on the other
hand, the ticket and contract therein properly con-
strued is the separate contract of each of the compan-
ies over which it reads, and the defendant in issuing
the ticket is to be held only as an agent of the others
and not responsible for their defaults, then we can dis-
cover no legal reason why the defendant should be
held responsible for the misrepresentation of the agent
of the connecting line at Chickamauga. Judge ELLIOT
in his work on Railroads, vol. 4, sec. 1596, says:
"There is some conflict among the authorities upon
the subject of through tickets over several different
roads, but the rule which is supported both by the bet-
ter reason and by the weight of authority is that even
when the ticket does not expressly provide that the
first company is acting for the other companies merely
as their agent in selling it, the rights of the passenger

and the duties and responsibilities of the different companies are substantially the same as if the ticket had been purchased at the office of each company separately, unless there is something in the contract making the first company responsible beyond its own line." And this statement of the law is supported by the decision of the Supreme Court of the United States in Mosher v. Railroad, 127 U. S. 390, already noted, and Mr. Hutchinson in his work on Carriers, section 152, endorsed this statement of the rule, and to the same effect is Railroad v. Looney, 85 Tex. 158; Harris v. Howe, 74 Tex. 534; Central Trust Co. v. Railroad, 65 Fed. 332. The only case directly in point opposing this statement of law is that of Head v. Railroad, 79 Ga. 358. In that case, it is true, the learned and distinguished jurist, C. J. BLECKLEY, upon a similar ticket, held that the agent at New Orleans, the point of the destination, was the representative of the selling company, but he enters into no discussion whatever of the principle upon which he bases this conclusion, and profound as is our respect and admiration for that gifted jurist, we think his conclusion is opposed by the great weight of authority and the elementary principles of the law of principal and agency. Moreover, we think that the Supreme Court of Georgia could have reached the conclusion which it did by applying the doctrine of numerous cases on this subject and holding that it was clearly the mistake of the selling agent at Tallapoosa, in placing the stamp on the wrong margin and in having the passenger sign at the wrong place, and the action in that case was properly against the selling company for its own default and the damages resulting therefrom.

Our conclusion is that the agent at Chickamauga was not the agent of the defendant in this case and that the defendant cannot be held responsible for his neglect or misconstruction of the contract, and that the conductor of the defendant was bound under the rules·

and regulations of the defendant to decline to recognize said ticket after it had expired according to the contract embodied in it.

And as already said, we can see no possible ground upon which plaintiff can recover of this defendant save and except that the conductor, in the performance of a perfectly legal right, performed it in a rude or insulting manner, as to which the evidence is in strong conflict, and in such case, is a question of fact for the jury. As the judgment of the circuit court must be reversed for the reasons above given, it becomes unnecessary to decide whether the verdict in the form in which it was rendered would constitute reversible error, as that objection can be readily obviated on another trial by the court requiring the jurors to sign the verdict as required by the act of 1901 (Laws 1901, p. 190). The judgment is reversed and the cause remanded to be proceeded with in accordance with the views herein expressed.

All concur.