Leyser v. Railroad.

JEREMIAH C. LEYSER, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, May 31, 1909.**

1. **PASSENGERS CARRIERS: Contract: Ticket.** A contract-ticket described in the opinion is held to be more than a mere token of a right to passage and binds the parties unless it fails to contain all of the terms of the contract, and certain restrictions in such a ticket are held to be reasonable.

2. ———: ———: **Stipulations: Evidence: Construction.** The stipulations of a contract-ticket are held to show that as there are conditions of the contract not contained in the ticket, and that the stipulation relating to return passage is made subject to certain stop-over rights not entered in the contract, which may be established by parole or otherwise.

3. ———: ———: ———: **Ejection: Instruction.** *Held,* under the ticket and the evidence the ejection of a passenger was wrongful and an instruction set out in the opinion is held sufficient.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*Warner, Dean, McLeod & Timmonds* for appellant.

(1) Plaintiff's ticket had expired by limitation. He had no right to ride thereon, and defendant had a right to reject him. Boling v. Railroad Co., 189 Mo. 233; Lillis v. Railway, 64 Mo. 464. (2) The ticket presented to the conductor was conclusive evidence of the contract of carriage. The conductor could look only thereto. Woods v. Railroad, 48 Mo. App. 125; Percy v. Railroad, 58 Mo. App. 75; Railroad v. Burnett, 50 Fed. 496; Boling v. Railroad, 189 Mo. 219; Mosher v. Railroad, 127 U. S. 390; Boylan v. Railroad, 132 U. S. 146; 2 Hutchinson on Carriers (3 Ed.), sec. 1065. (3) The court committed error in permitting plaintiff to testify that the Pennsylvania Company was "advertising tickets

at different times, 60 and 30 days." 6 Cyc., 574; Mosher v. Railroad, 127 U. S. 390; Boling v. Railroad, 189 Mo. 219. (4) The court erred in permitting plaintiff to testify that he was told that everything on the ticket was to be disregarded, etc. Boylan v. Railroad, 132 U. S. 146; Boling v. Railroad, 189 Mo. 234; Railroad v. Bement, 50 Fed. 501. (5) The court committed error in permitting plaintiff to introduce in evidence the printed circular, "Exhibit A." Mosher v. Railroad, 127 U. S. 390; 6 Cyc., 574; Boling v. Railroad, 189 Mo. 219.; Boylan v. Railroad, 132 U. S. 146. (6) The court erred in permitting plaintiff to testify as to when and where and how long he stopped over while enroute. Boylan v. Railroad, 132 U. S. 146; Boling v. Railroad, 189 Mo. 234.

*Angevine, Cubbison & Holt and Bird & Pope* for respondent, filed argument.

JOHNSON, J.—Plaintiff sued the Chicago, Burlington & Quincy Railroad Company (known as the "Burlington"), the Pennsylvania Railroad Company and the Pennsylvania Company to recover actual and exemplary damages for his alleged wrongful ejection at Aurora, Illinois, from a Burlington passenger train. At the trial he took a voluntary nonsuit as to the last two named defendants and proceeded against the Burlington. He recovered judgment for $600 actual and $400 exemplary damages and the cause is here on the appeal of defendant.

On July 20, 1907, plaintiff applied to the agent of the Pennsylvania Company at Kansas City for a ticket to Norfolk, Va., and return. That company maintained a passenger agent at Kansas City but had no line of its own into that city, St. Louis and Chicago being the Western termini of its lines. It had a traffic arrangement with the Burlington and Wabash Companies respecting passenger business between Kansas City and

points on the Pennsylvania system.  East of Pittsburg, the Pennsylvania lines were operated by the Pennsylvania Railroad Company; west of Pittsburg by the Pennsylvania Company.  After talking with the agent, plaintiff concluded to purchase a reduced rate round trip "contract" ticket calling for transportation on the going trip over the Wabash to St. Louis and thence on the Pennsylvania lines to Norfolk and on the return trip over the Pennsylvania lines to Chicago and thence to Kansas City on the Burlington.  The ticket selected was issued by the Wabash Railroad Company and was styled "Reduced Rate Non-Transferable Excursion Ticket issued on account of the Jamestown Ter-Centennial Exposition." It was a first class ticket and the rate charged was a reduced rate being one and one-third of the regular fare charged for the trip one way.  The agent sent over to the Wabash ticket office for a ticket and plaintiff signed and received it at the Pennsylvania office.  Among the contractual provisions printed on the face of the ticket were the following:

"2d.  GOING TRIP.  That Going trip must begin on date of sale as stamped on back and written hereon by Selling Agent, and this Ticket must be used by continuous passage to destination prior to midnight of date punched by Selling Agent in Column 1.

"3d.  RETURN TRIP.  That Return trip must begin on date stamped on back by Validating Agent, which date must not be later than Sept. 18, 1907, and this ticket must be used by continuous passage to original starting point prior to midnight of date punched by Validating Agent in Column 2 which date shall not be more than three (3) days after date of validation.

"4th.  VALIDATION FOR RETURN.  That this ticket will not be good for return trip unless signed on back by original purchaser, in the presence of the authorized Validating Agent of Terminal Line at Destination over which ticket reads therefrom, and stamped and witnessed by said validating agent.

"5th. IDENTIFICATION. That the holder must be identified as the person named hereon and who signed this ticket as the original purchaser, to the satisfaction of any conductor or agent, by signature and otherwise, whenever requested.

"6th. NON-TRANSFERABLE. That if this ticket be presented for validation, passage or checking of baggage by any other than the original purchaser it will not be honored but will be forfeited and any Agent or Conductor of any line over which it reads shall have the right to take up and cancel the ticket.

"7th. STOP-OVERS. That it is subject to the stop-over regulations of the lines over which it reads.

"12th. NON-MODIFICATION OF TERMS. That no agent or employe of any line has power to alter, modify or waive any of the conditions of this contract."

On the back of the ticket appears the following with reference to validation at Norfolk: "Validation. Instructions to Validating Agents. Stamp date of validation in space below and punch Return Transit Limit in Column 2 on face of Contract, being governed by number of days inserted by Selling Agent in third clause of contract. If number of days is not inserted in third clause, Validating Agent will be governed by "transit limit" shown in one-way tariff as applicable from Validating Station to the Original Starting Point."

Plaintiff desired to exercise stop-over privileges in the east and he so informed the selling agent. He was told to disregard the restrictive provisions of the ticket and be guided by a printed circular issued by the Pennsylvania Company, copy of which the agent handed plaintiff. We quote from the testimony of plaintiff: "Well, he told me that everything on that ticket was disregarded; pay no attention to it, time limit and everything, and if I got back by the 18th of September that I was all right; and then he handed me that circular. He said if any conductors—they have all been notified, this circular has been sent to every conductor on the

road that our lines connect over, and he says 'if any dispute comes up, why, you show them that circular,' and gave me the circular." The circular bore the following heading:

"Circular No. 2814. Pennsylvania Lines West of Pittsburgh. The Cleveland, Akron & Columbus Railway Co., The Cincinnati & Muskingum Valley Railroad Co., The Pennsylvania Company, The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co., The Vandalia Railroad Co. Passenger Department, June 19, 1907. Stop-over Privileges on Jamestown Exposition Tickets. It should be distinctly understood that no stop-over privileges whatever will be permitted on the Pennsylvania Lines West of Pittsburgh. To Representatives of Connecting Lines and to Ticket Agents, Pennsylvania Lines: The Pennsylvania Railroad Company announce, effective June 21st, 1907, the following stop-over privileges on excursion tickets of that Company's or of foreign lines' issue to Norfolk, Va., on account of the Jamestown Exposition." Then follows a statement of the various stop-over privileges allowed.

Plaintiff used the ticket to Norfolk and when ready to begin the return journey, presented it to the validating agent who stamped it July 31, 1907, and punched it to expire August 3rd. On the return trip, plaintiff was permitted by the Pennsylvania conductors to stop off at two cities, viz., Washington and Harrisburg and his ticket was honored to Chicago, where he arrived late in the afternoon of August 8th. That night at 10:30, he boarded one of defendant's passenger trains for Kansas City. He showed the ticket to a gatekeeper at the station who punched it and passed him through the gate. He entered and seated himself in the chair car and handed his ticket to the conductor who, after examination, declared the ticket "dead" and refused to accept it. The point made by the conductor was that as the validating agent had stamped and punched the ticket to expire August 3rd, it was not good for passage after that date.

Plaintiff called the attention of the conductor to the stop-over rights accorded by the ticket, explained that he had been permitted to stop off at Washington and Harrisburg and offered to exhibit the Pennsylvania company's circular as evidence of the fact that he had exercised a contractual right within the terms of the contract. The conductor refused to look at the circular as it did not purport to be one issued by the Burlington Company and demanded payment of cash fare. Plaintiff would not comply with the demand and when the train reached Aurora, the conductor called in a depot policeman and had him forcibly ejected from the train. The testimony of plaintiff is to the effect that the conductor was very insulting and abusive. He charged plaintiff with having stolen the ticket and refused to return the ticket. He shook his finger in plaintiff's face and declared that he would teach plaintiff a lesson. He spoke in a loud tone of voice and attracted the attention of all the passengers in the car.

All this is denied by witnesses for defendant who say the plaintiff was treated courteously. The evidence of plaintiff is substantial and for present purposes, we must accept it as the true version of what occurred. The court refused defendant's request for a peremptory instruction and at the request of plaintiff, instructed the jury "that if you find and believe from the evidence that on or about July 20, 1907, the defendants, Chicago, Burlington & Quincy Railroad Company, The Pennsylvania Railroad Company and the Pennsylvania Company, undertook, for hire, to carry the plaintiff from Kansas City, Missouri, to Norfolk, Virginia, and return, with the privilege of stop-overs at Washington, D. C., and Harrisburg, Pennsylvania, within the final return limit of sixty (60) days from said July 20, 1907. That said named defendants gave to the plaintiff the ticket introduced in evidence, and at the same time gave to the plaintiff the circular (No. 2814), introduced in evidence, and informed the plaintiff that the limitations

contained in said ticket as to time the return passage should be made on said ticket after the same had been validated at Norfolk, Virginia, would be disregarded, if stop-overs were made by the plaintiff on said ticket at Washington, D. C., and Harrisburg, Pennsylvania, and would be protected returning to September 18, 1907, and that plaintiff stopped over on said ticket at Washington, D. C., and Harrisburg, Pennsylvania, and that plaintiff boarded the train of defendant, Chicago, Burlington & Quincy Railroad Company, at Chicago, Illinois, and while riding on said train to Kansas City, Missouri, on said ticket, was, on or about August 8, 1907, and at about the hour of 11:30 p. m., on said day, and at Aurora, Illinois, caused by the conductor on said train, while acting as such conductor, and while acting in the line of his employment as such conductor, to be arrested, and to be ejected from said train, and in the presence of numerous passengers on said train, and that by reason thereof plaintiff was humiliated and mortified, and that by reason of so being ejected from said train the plaintiff was compelled to return to Chicago, Illinois, and to pay his fare from Aurora, Illinois, to Chicago, Illinois, and from Chicago, Illinois, to Kansas City, Missouri, then you will find for the plaintiff and against the Chicago, Burlington & Quincy Railroad Company; and in estimating his damages (if any), you will take into consideration the money necessarily paid out by him for railroad fare (not exceeding the sum of $10.24). And if you further find and believe from the evidence that the said conductor in causing the arrest (if any), of the plaintiff, and causing plaintiff to be ejected from said train intentionally acted wrongfully, and maliciously (and by 'maliciously' is not meant spite or ill-will, but the intentional doing of a wrongful act, without just cause or excuse), and was discourteous and insulting to the plaintiff, and intentionally humiliated him, then you will also take into consideration the wounded feelings and humiliation (if any), caused the plaintiff by

being ejected from said train, and all the facts and circumstances detailed by the evidence in this case, and you will assess his damages at such sum (not exceeding $1,000), as the evidence shows will be a full, fair and just compensation for the injury to his feelings (if any), sustained by the plaintiff. And if you further find and believe from the evidence that the said conductor acted without just cause or excuse, and that he intended to humiliate the plaintiff by ejecting him from said train, then you may presume that he acted maliciously, and you may allow the plaintiff such further sum (not exceeding $800), known in law as punitive or exemplary damages, as the evidence shows would be a proper punishment for the said defendant, Chicago, Burlington and Quincy Railroad Company."

At the threshold of our consideration of the case, the most important question is whether the ticket offered by the plaintiff to defendant's conductor entitled him to transportation from Chicago to Kansas City. Was it in full force at that time, or had it expired? If, by the terms of the contract the ticket had expired the conductor was acting within his right and his duty to his employer in refusing to accept it and in ejecting plaintiff from the train on his refusal to pay fare. But in no event had the conductor the right to employ unnecessary force in the ejection nor to assault and humiliate plaintiff with insulting, abusive or threatening language.

Should we find that the ticket stated the entire contract between plaintiff and the carriers over whose lines it called for transportation and, further, that the third condition printed on the face of the ticket conclusively fixed the period after the validation at Norfolk in which the return trip was to be completed, we would be compelled to sanction the contention of defendant that the ticket expired August 3rd and was not good for passage five days later. The third clause imperatively required plaintiff to begin the return trip on the date stamped

on the ticket by the validating agent and to keep on traveling until he arrived at Kansas City. It allowed three days for the trip and it is in evidence that by continuous travel, three days would be consumed in going by this route from Norfolk to Kansas City. Pursuant to the provisions of this clause, the validating agent stamped the ticket on July 31st, the day plaintiff presented it to him and punched it to expire August 3rd, three days later. Clearly the ticket was "dead" on August 8th if the third condition printed thereon constituted the only contract relating to the time and manner in which the return trip could be made. The ticket was more than a mere token of plaintiff's right to transportation from Kansas City to Norfolk and return. Where a passenger purchases a ticket and pays full fare therefor, the ticket is not regarded as the contract between him and the carrier but as a mere token of a contract—of the passenger's right to be carried. In such cases, the law itself fixes the terms of the contract which control the relationship of carrier and passenger. But where the ticket purports on its face to express the contract between the parties and its conditions and restrictions at variance with the conditions of a contract the law would impose are supported by a consideration, as for example, by a reduced rate, the ticket itself constitutes the contract of transportation and its reasonable and lawful conditions and restrictions will be enforced by the courts. [Boling v. Railroad, 189 Mo. 219; Cherry v. Railroad, 191 Mo. 489; Mosher v. Railroad, 127 U. S. 390; Boylan v. Railroad, 132 U. S. 146.] We quote from the opinion of Judge GANTT in Boling v. Railroad, supra:

"It has been held by a number of the highest courts in the United States, that when, as in this case, the ticket on its face purports to be a special contract of carriage, and is based upon a valuable consideration, that is to say, sold at a reduced rate, then the ticket itself constitutes a contract of carriage between the parties, and the provision limiting the time within which it shall be

good, and providing that it shall be stamped as of the date when the return passage is commenced, by the ticket agent at that place, and that the holder of the ticket must identify himself or herself to such agent as the original purchaser thereof, and sign the same in his presence, and the signing and attestation dated and indicated by punched marks on the ticket, and that such ticket should only be good for a continuous return passage commenced on that date, is a reasonable regulation and binding upon the holder of such a ticket."

But, unfortunately for the position of defendant, the third clause of the ticket does not purport to express the whole contract relating to the time and manner of the return trip. We are willing, *arguendo*, to stand with defendant in its position that the selling agent at Kansas City had no authority by oral promises or representations to alter or vary the terms of the written contract, though it must be apparent that he was the agent of defendant and that in the eye of the law, defendant was present when he made the promises and representations, and approved and ratified all that he said or did. We have in mind the rule that antecedent or contemporaneous oral promises or representations which contradict, vary or enlarge the terms of a written contract are merged into the written contract, but this rule does not aid defendant, for the reason that the oral representations of the selling agent were merely a repetition of the representations appearing in the circular of the Pennsylvania lines, and these representations, as we shall show, do not contradict, vary, nor enlarge the terms of the contract but by its terms are made a part of the contract as fully as would have been the case had they been copied into the ticket.

The seventh clause of the contract in providing "that it is subject to the stop-over regulations of the lines over which it reads" could mean no less than that the other clauses of the contract, including the third, were subordinated to and made subject to the seventh

clause. In other words, that by complying with the stop-over regulations of the Pennsylvania Company, plaintiff had the right to stop off on his return trip and would not be required to complete the journey in three days after he began it. Any other construction would completely deprive the seventh clause of any force and would leave it meaningless and impotent. Plaintiff could not stop over at Washington and Harrisburg and yet travel continuously, nor could he reach Kansas City in three days from the time he left Norfolk if he did stop. The construction of the contract by defendant places the third and seventh clauses in irreconcilable conflict and gives predominance to the third, but the expressed intention of the parties was to give the seventh controlling power and we must hold that plaintiff had the right to stop over on the return trip, and since it is conceded that he followed the regulations of the Pennsylvania Company, the contractual limit of his return journey was extended beyond the time stamped by the validating agent by the time he stopped in Washington and Harrisburg. The reference in the seventh clause to stopover privileges adopted the regulations of the Pennsylvania Company and by implication wrote them into the contract. It was proper that plaintiff should prove what those regulations were, since they were not set out in the ticket, and this he could do by statements made by the selling agent as well as by the printed circular emitted by the Pennsylvania Company. In refusing to accept the ticket, defendant placed itself in the attitude of accepting the benefits of a contract made by its agent and then repudiating its burdens and obligations. It was bound to know that the passenger had pursued his journey in strict compliance with the letter of the contract and it should have informed its conductors to honor "Jamestown" tickets used as plaintiff had used his ticket. The ejection was wrongful and since the evidence of plaintiff tends to show that it was malicious

(Glover v. Railway, 129 Mo. App. 563), assessment of punitory as well as actual damages was permissible.

Many objections to the instruction given at the request of plaintiff are urged by defendant, but in what we have said, they are sufficiently answered. We find no prejudicial error in that instruction, nor in the trial of the case.

The judgment is affirmed. All concur.